UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,                                  Criminal No. 16-246 (JRT/FLN)

          Plaintiff,

    v.

Jerome Ruzicka (1),                                        **REPORT AND RECOMMENDATION**

          Defendant.

---

Benjamin Langner and Lola Velazquez-Aguilu, Assistant United States Attorneys, for Plaintiff.
John Conard for Defendant Jerome Ruzicka.

---

**THIS MATTER** came before the undersigned United States Magistrate Judge on April 26, 2017, on Defendant Jerome Ruzicka's motions to dismiss (ECF No. 130), and to suppress evidence seized pursuant to search warrants (ECF No. 133). This matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. At the hearing, the Government entered four exhibits into evidence. *See* Exhibit and Witness List, ECF No. 158. For the reasons set forth below, the Court recommends that Ruzicka's motions be **DENIED**.

**A.**     **The Superseding Indictment**

On January 25, 2016, a United States Grand Jury returned a Superseding Indictment, charging Defendants Jerome Ruzicka, Scott Nelson, W. Jeffrey Taylor, Lawrence Miller, and Lawrence Hagan, with defrauding Starkey Laboratories ("Starkey") and its owner, William F. Austin, of $20,000,000. *See generally* Superseding Indictment, ECF No. 60. The Superseding Indictment alleges that Defendants accomplished their fraud by establishing sham consulting companies, exploiting pricing discounts, and granting themselves bonuses and stock options. *Id.* The Superseding Indictment further alleges that Ruzicka and Taylor controlled Archer Consulting, Claris

Investments, and Archer Acoustics, all of which were "sham" or "dummy" companies or entities.[1] *Id.* at 8–9. Ruzicka, Nelson, and Miller are alleged to have been high level Starkey executives entrusted to oversee the operations and act in the best interest of the company. *Id.* ¶ 7–9. Hagan was also a Starkey employee from 1982–1986, and from 1999–2005. *Id.* ¶ 11. Taylor was the president of Sonion U.S., ("Sonion"), which sold and manufactured miniature hearing-aid components to Starkey. *Id.* ¶ 10. Among the charges, Ruzicka and Taylor are accused of falsely representing to Sonion that Archer Acoustics and Claris Investments were Starkey affiliates, in order to obtain pricing discounts negotiated for Starkey, and then providing the same discounted pricing to Auric Horsysteme, another hearing aid manufacturer. *Id.* at 12–13.

All Defendants are charged with one count of conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1349, and various counts of wire fraud, in violation of 18 U.S.C. § 1343. *Id.* ¶¶ 17–66, 69–70. Defendants Ruzicka, Nelson, and Taylor, are additionally charged with various counts of mail fraud, in violation of 18 U.S.C. § 1341. *Id.* ¶¶ 71–74. Ruzicka, Taylor, and Hagan, are accused of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). *Id.* ¶¶ 73–74. Ruzicka, Taylor, and Nelson are charged with transactions involving fraud proceeds, in violation of 18 U.S.C. § 1957. *Id.* ¶¶ 75–76. Ruzicka and Nelson are accused of making and subscribing false individual income tax returns, in violation of 26 U.S.C. § 7206(I). *Id.* ¶¶ 77–82. Finally, Nelson is charged with willfully aiding and assisting the preparation and presentation of a false income tax return, in violation of 26 U.S.C. § 7206(2). *Id.* ¶¶ 83–84.

**B.     Motion to Dismiss (ECF No. 130)**

---

[1] Hagan is also accused of controlling Claris Investments and Archer Acoustics. ECF No. 60 at 8–9.

Ruzicka moves pursuant to Rule 12 of the Federal Rules of Criminal Procedure to dismiss various counts in the Superseding Indictment. Mot. to Dismiss, ECF No. 130; Fed. R. Crim. P. 12 ("A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."). For the reasons that follow, the Court concludes that Ruzicka's motion to dismiss should be denied in its entirety.

1. **Conspiracy to Commit Mail and Wire Fraud (Count One)**

Count One accuses Defendants of conspiracy to commit mail and wire fraud. ECF No. 60 at 7–24. To prove a mail or wire fraud conspiracy conviction, the Government must prove: (1) there was an agreement between two or more persons to commit mail and wire fraud; (2) Ruzicka knew of the agreement; and (3) Ruzicka intentionally joined in the agreement. *See United States v. Cole*, 721 F.3d 1016, 1021 (8th Cir. 2013). Ruzicka first argues that Count One is duplicitous and must be dismissed because it alleges "three separate fraud schemes" as one conspiracy to commit mail and wire fraud. *Id.* at 1. The Government contends, "[t]he Superseding Indictment explains the purpose of the conspiracy—to embezzle and misappropriate money and business opportunities belonging to Starkey and Sonion and to conceal the scheme from Austin and others—and sets forth the various means employed by the conspirators [to] carry[ ] out the scheme." Opp'n Mem. 38, ECF No. 153.

Duplicity is the joining in a single count, two or more distinct and separate offenses. *See United States v. Street*, 66 F.3d 969, 974 (8th Cir. 1995). "The principal vice of a duplicitous indictment is that the jury may convict a defendant without unanimous agreement on the defendant's guilt with respect to a particular offense." *United States v. Karam*, 37 F.3d 1280, 1286 (8th Cir. 1994).

3

The Court concludes that Count One alleges a single conspiracy carried out in a variety of ways. The Government intends to prove at trial a single conspiracy to commit mail and wire fraud and has the burden to provide factual proof at trial of the conspiracy. The Superseding Indictment adequately alleges that Ruzicka knew of and intentionally joined in an agreement with others to commit mail and wire fraud. *See* ECF No. 60. Count One is not duplicitous in its allegations that Defendants carried out a conspiracy by employing three different manners or means.

### 2. Mail and Wire Fraud, Conspiracy to Commit Money Laundering, and Transactions Involving Fraud Proceeds (Counts 6, 9–11, 17–22, 24–28, 30)

Ruzicka also moves to dismiss Counts 6, 9–11, 17–22, 24–28, and 30, for failure to state a crime. Count 6 accuses Ruzicka and Taylor of mail fraud. ECF No. 60 at 25. To sufficiently charge mail fraud, "the Government must [allege]: (1) a scheme to defraud by means of material false representations or promises, (2) intent to defraud, (3) reasonable foreseeability that the mail would be used, and (4) that the mail was used in furtherance of some essential step in the scheme." *United States v. Nguyen*, 829 F.3d 907, 921 (8th Cir. 2016). Counts 9–11 and 17–22 allege wire fraud. ECF No. 60 at 26–28. To allege wire fraud, the United States needs to plead facts showing that: (1) Ruzicka joined a scheme to defraud; (2) with the intention to defraud; (3) it was reasonably foreseeable that interstate wire communications would be used; and (4) the wires were, in fact, used. *See United States v. Louper-Morris*, 672 F.3d 539, 555–56 (8th Cir. 2012). Counts 24 and 25 allege conspiracy to commit money laundering. ECF No. 60 at 28–30. A conspiracy to commit money laundering allegation requires "that the defendant knowingly joined a conspiracy to launder money and that one of the conspirators committed an overt act in furtherance of that conspiracy." *United States v. Delgado*, 653 F.3d 729, 737 (8th Cir. 2011). Counts 26–28 and 30 allege transactions involving fraud proceeds. ECF No. 60 at 30–31. Transactions involving fraud proceeds "requires

4

a showing (1) that the defendant knowingly engaged in a monetary transaction, (2) that the defendant knew the property involved derived from specified unlawful activity, and (3) that the property was of a value greater than $10,000." *United States v. Pizano*, 421 F.3d 707, 722 (8th Cir. 2005).

These Counts allege that Ruzicka paid himself for consulting work done by Archer Consulting for Starkey, without Austin's knowledge. *See generally* ECF No. 60. Specifically, the Superseding Indictment alleges that Ruzicka committed mail fraud when IRS W-2 Forms were mailed, which related to funds received through Archer Consulting, as well as a check from Archer Consulting to Paychex Retirement Services. *Id.* at 25. Ruzicka is accused of committing wire fraud when he sent payments from Starkey's bank account to Archer Consulting's bank account and when he received funds from Auric Horsysteme and Sonion to Claris Investments or Archer Acoustics' accounts. *Id.* at 27, 29–30. Ruzicka allegedly misrepresented that Claris Investments and Archer Acoustics were Starkey affiliates in order to obtain discounted pricing from Sonion and then shared those discounts with Auric Horsysteme. *Id.* at 12–13. The allegation related to money laundering is that Ruzicka and Taylor conducted financial transactions designed to conceal that the proceeds were derived from a conspiracy to commit mail and wire fraud. *Id.* at 28–30. Finally, Ruzicka is also accused of negotiating checks from Archer Consulting to Paychex 401k Retirement Services, and negotiating checks from Archer Consulting to himself and Taylor, thereby committing transactions involving fraud proceeds. *Id.* at 30–31.

Ruzicka contends that the Counts alleging payments to and from Archer Consulting fail to state a crime because "nothing was concealed about these submissions from a registered Minnesota company. . . . As such, monies derived from Ruzicka's work with Archer consulting does not constitute mail and wire fraud." ECF No. 130 at 7–8. The Court observes that the Superseding

Indictment makes clear that Ruzicka, through Archer Consulting, "falsely claimed to provide services to Starkey, and then submitted phony invoices to Starkey for those purported services." ECF No. 60 ¶ 19. The Court concludes that the Superseding Indictment sufficiently charges Ruzicka with having committed mail and wire fraud by charging Starkey for services that were not rendered, and then paying invoices issued by Archer Consulting to Starkey. The Superseding Indictment outlines the alleged scheme, the intent to defraud Starkey and thereby Austin, the foreseeability that the use of the mails or wires would be used, and identifies instances when the mails or wires were, in fact, used. *Nguyen*, 829 F.3d at 921; *Louper-Morris*, 672 F.3d at 555–56. To the extent that Ruzicka contends that Archer was a registered Minnesota company that provided legitimate services it then invoiced for, this is a defense at trial to the charges alleged.

Ruzicka also argues that Count 24 fails to state a crime because "[t]he transactions set forth in the discrete counts of the Superseding Indictment show nothing secretive." ECF No. 130 at 8–9. The Superseding Indictment, however, makes clear that Ruzicka acted "to conceal the scheme from Austin and others." ECF No. 60 at 8. The Superseding Indictment adequately alleges that Ruzicka engaged in a conspiracy to commit money laundering by "conducting financial transactions affecting interstate commerce . . . knowing that the property involved in the financial transactions involved proceeds of [mail and wire fraud]." *Id.* at 29. Namely, proceeds that Archer Consulting received for services that it did not render to Starkey. Count 24 sufficiently alleges that Ruzicka engaged in a conspiracy to commit money laundering.

Ruzicka states that the Superseding Indictment fails to show that any crime was committed by use of Claris Investments or Archer Acoustics because "Starkey held no legal claim to Sonion's pricing structure." ECF No. 130 at 10–11. While this may be a defense at trial, it does not point to any flaw in the Superseding Indictment's allegations that Ruzicka wrongfully obtained proceeds

6

from Auric Horsysteme and Sonion, thereby committing wire fraud. The Superseding Indictment clearly lays out that Ruzicka, "fraudulently represented . . . [that Claris Investments and Archer Acoustics were] Starkey affiliates such that Sonion allowed them to purchase hearing-aid components at Starkey's discounted prices." ECF No. 60 ¶ 19. They then shared that pricing that it should not have been able to receive, as it was not a Starkey affiliate, with Auric Horsysteme in exchange for "commission" checks. *Id.* at 12–13.

The Superseding Indictment adequately alleges that Ruzicka engaged in a conspiracy to commit money laundering by "conducting financial transactions affecting interstate commerce . . . . knowing that the property involved in the financial transactions involved proceeds of [mail and wire fraud]." *Id.* At 29. Namely, proceeds from defrauding manufacturers by contending that Claris Investments or Archer Acoustics were Starkey affiliates and then unlawfully exploiting its access to that pricing scheme. The Counts should not be dismissed for failure to state a claim.

### 3. The Legally Compelled Mailing Doctrine (Counts 4, 5, and 7)

Additionally, Ruzicka argues that any mail fraud allegations that rely on a legally compelled mailing, must be dismissed for failure to state a claim. Specifically, Ruzicka contends that because IRS Forms W-2, mailed on behalf of Archer Consulting, and the mailing of a corporate car's title by the Minnesota Department of Motor Vehicles to Ruzicka, are required by law, these mailings cannot be the basis of a mail fraud. ECF No. 130 at 9–11. The Court disagrees.

"The federal mail fraud statute does not purport to reach all frauds, but only those limited instances in which the use of the mails is a part of the execution of the fraud, leaving all other cases to be dealt with by appropriate state law." *Kann v. United States*, 323 U.S. 88, 95 (1944). The legally compelled mailing doctrine originated in *Parr v. United States*. 363 U.S. 370 (1960); *see* ECF No. 130 at 9 (citing *United States v. Boyd*, 606 F.2d 792, 793 (8th Cir. 1979) ("The mail fraud statute

7

may not be invoked where, as here, the mailings are "legally compelled")." In *Parr*, the indictment did not allege that the mailings—letters, tax statements, checks, and receipts—were fraudulent in themselves. In holding that the "mailings made or caused to be made under the imperative command of duty imposed by [ ] law are [not] criminal under the federal mail fraud statute. . . [,] " *id.* at 391, the *Parr* Court relied on the fact that the mailings were both innocent in themselves and legally compelled. The Court held that such mailings could not constitute mailings for the purpose of executing a fraudulent scheme, as required by the mail fraud statute. *See id.*

In *United States v. Dadanian*, the Dadanian brothers challenged their mail fraud convictions under the legally compelled mailing doctrine. 818 F.2d 1443, 1446 (9th Cir. 1987), opinion modified on reh'g, 856 F.2d 1391 (9th Cir. 1988). In that case, a city administrator and a city councilman, persuaded the city to authorize poker playing and to grant one poker club license in the city, concealing that they held a secret fifty-one percent interest in the club. *Id.* The Dadanians were then hired as the strawman to cover the city administrators' true interest, and at some point mailed a letter with a copy of a false economic interest form, which became the basis of their mail fraud conviction. *Id.* at 1446. The Dadanians challenged the conviction under *Parr*, as a legally compelled mailing. *Id.* at 1446–47. The Ninth Circuit rejected the challenge reasoning that:

> In *Parr* the mailing[s] . . . which did not contain misrepresentations was held not to be an unlawful execution of a fraudulent scheme . . . since the defendants were required by law to assess and collect taxes, and because the tax assessments were neither alleged nor proved to be illegal, excessive or padded. . . . Here [the] statements of economic interest, while required by law to be filed, were false on their face. Unlike *Parr*, these false statements were made in furtherance of the scheme.

*Id.* at 1446–47.

While Ruzicka is correct that the mailing of IRS Forms W-2 related to funds received through Archer Consulting is legally compelled, unlike in *Parr*, the W-2 Forms here are alleged not

8

to be innocent in themselves. Indeed, the W-2 Forms here are alleged to have been mailed in furtherance of the scheme to defraud by concealing the fraudulent way Ruzicka and Taylor extracted over $7 Million from Starkey disguised as legitimate consulting fees earned by Archer Consulting. ECF No. 60. Unlike the documents in *Parr*, which were innocent in themselves, the W-2 Forms, alleged here in Counts 4 and 5, are alleged to be in themselves fraudulent. They purport to show legitimate W-2 income paid by Archer Consulting to Ruzicka and Taylor. *See id.* The Grand Jury alleges that the money described on the W-2 Forms was not legitimately earned income, but was instead fraudulently extracted from Starkey by Ruzicka and Taylor through a consulting company that did not render services.

Therefore, the Superseding Indictment adequately alleges that mailings, not innocent in themselves, though legally compelled to be mailed, provide the basis for the mail fraud alleged in Counts Four and Five. *But cf. United States v. Green*, 786 F.2d 247, 249–50 (7th Cir. 1986) (holding that *Parr* contemplates mailing of legally required notices to drivers who left the scene of an accident); *see also United States v. Lake*, 472 F.3d 1247, 1255–60 (10th Cir. 2007) (criticizing *United States v. Green* and holding the filing of a non-fraudulent Form 10-K with the SEC pursuant to federal law does not fulfill requirements of the federal mail fraud statute).

Ruzicka also challenges Count 7, which charges mail fraud based on the mailing of a car title by the Minnesota Department of Motor Vehicles to Ruzicka. ECF No. 130 at 11. Under the legally compelled mailing doctrine, that argument is also meritless. In *United States v. Schmuck*, Schmuck challenged his mail fraud conviction on the basis that he mailed a title-application form to the Wisconsin State Department of Transportation in accordance with Wisconsin law. 489 U.S. 705, 711–12 (1989). In rejecting this contention, the Court reasoned that, "[t]he mailing of the title-registration forms was an essential step in the successful passage of title to the retail purchasers.

9

. . . The relevant question at all times is whether the mailing is part of the execution of the scheme as conceived by the perpetrator at the time . . . . *Id.* at 714–15. Similarly, Ruzicka is accused of wrongfully transferring the title of a corporate vehicle to himself. ECF No. 60 at 23–24. The mailing of the title, though required by law, was an essential step in the successful passage of title transfer. *See Schmuck*, 489 U.S. at 714–15. The Superseding Indictment adequately alleges that the mailing constitutes the basis of a mail fraud and the proceeds as that which were derived from a knowing mail fraud.

### 4. Making and Subscribing a False Tax Return (Counts 31 and 32)

In Counts 31 and 32, Ruzicka is accused of making and subscribing a false return by providing materially false information in his 2010 and 2014 Individual Income Tax Returns, by under-reporting his adjusted gross income. ECF No. 60 at 32–33. "[T]he [G]overnment must put forth evidence that the document in question was false as to a material matter, that the defendant did not believe the document to be true and correct as to every material matter, and that he acted willfully with the specific intent to violate the law." *United States v. Fairchild*, 819 F.3d 399, 406–07 (8th Cir. 2016) (internal citations omitted).

Ruzicka contends that because the Government does not allege what the material misrepresentation in each return is, he is unable to "answer the allegation that he made a material misrepresentation on these returns." ECF No. 130 at 11–12. For these reasons, Ruzicka contends that Counts 31 and 32 should be dismissed as vague. *Id.* The Government argues that "[b]oth counts allege the essential elements, including by alleging that the returns contained materially false information in that line 37 on both returns falsely reported defendant's adjusted gross income." ECF No. 153 at 46. Alternatively, the Government asserts that "the Superseding Indictment details a $200,000 embezzlement in 2014 . . . [and] alleges that Nelson and Ruzicka did not record the

10

$200,000 payment as compensation and that as a result, Starkey's payroll department did not include the $200,000 as a taxable benefit to Ruzicka." *Id.* at 46. With respect to the 2010 Count, the Government adds that "knowing the full extent of his proceeds [from sale of a company owned by him that he made to Starkey], Ruzicka did not disclose this income on his return for the 2010 tax year." *Id.*

"A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18 (2010). Here, the Superseding Indictment alleges that Ruzicka wrongfully obtained proceeds in 2010 and 2014 which he then failed to report as income on his tax returns for those years. ECF No. 60 at 32–33. The allegations provide Ruzicka with fair notice of what is prohibited. *See Holder*, 561 U.S. at 18. Ruzicka's motion to dismiss should be denied.

## C. Motion to Suppress (ECF No. 133)

Ruzicka moves to suppress evidence seized pursuant to search warrants contending that Special Agent Brian Kinney, in relying on Austin's statements, submitted "sworn search warrant applications [that] are riddled with omissions of material facts and outright lies." Mot. to Suppress 2–8, 12, ECF No. 133. The Government argues that Ruzicka has not met his burden to make a preliminary showing, pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), of a false statement or a statement made with reckless disregard of the truth. The Court agrees.

If a probable cause determination was based on an affidavit that contained false statements made knowingly and intentionally or with reckless disregard for the truth, the search warrant is invalid unless probable cause exists when reconstructed without such statements. *See Franks*, 438 U.S. at 171. "[W]here the defendant makes a substantial preliminary showing that a false statement

knowingly and intentionally, or with reckless disregard for the truth, was included by *the affiant* in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Id.* at 155–56 (emphasis added). To be entitled to a *Franks* hearing, a defendant must show first that the affiant made "a false statement knowingly and intentionally, or with reckless disregard for the truth . . . ." *United States v. Humphreys*, 982 F.2d 254, 259 n.2 (8th Cir. 1992). After a defendant makes this showing, he must also make a substantial preliminary showing "that the affidavit's remaining content is insufficient to establish probable cause." *Id.*

Ruzicka does not contend that Special Agent Kinney, the affiant, manufactured material misrepresentations or omissions, but only that "Kinney recklessly disregarded the truth in adopting, under oath, Austin's representations." ECF No. 133 at 13. This is not enough to meet his preliminary burden to show that the affiant deliberately or in reckless disregard for the truth, included a false statement in the affidavit. To be material under *Franks*, an omission must do more than potentially affect the probable cause determination: it must be "necessary to the finding of probable cause." *Franks*, 438 U.S. at 156.

Kinney's reliance on Austin's statements, even if some were false, does not entitle Ruzicka to a hearing because he has failed to establish that the affiant, Special Agent Kinney, made any false statements, deliberately or otherwise. It is also worth observing that while Ruzicka claims that Austin's statements are "riddled with omissions of material facts and outright lies," Ruzicka has not actually shown that any of Austin's statements are in fact false. ECF No. 133 at 12.

The Eighth Circuit has held that where an officer-affiant omitted that several informants were in jail for similar allegations and had received financial consideration from the Government, the warrant was still supported by probable cause. *See United States v. Ellison*, 793 F.2d 942, 947 (8th

Cir. 1986). To the extent that Ruzicka argues that Austin is not to be believed, this presents a trial defense, but does not defeat a probable cause finding. Ruzicka has not shown that Special Agent Kinney had the requisite intent to mislead. The Court concludes that Ruzicka has not met his initial burden to justify a *Franks* hearing by showing that there were false statements or omissions made knowingly and intentionally, or with reckless disregard for the truth. Therefore, Ruzicka's motion for an evidentiary hearing and to suppress evidence pursuant to search warrants under *Franks*, must be denied.

**D.     Recommendation**

Based upon the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Ruzicka's motions to dismiss (ECF No. 130) and to suppress evidence pursuant to search warrants (ECF No. 133), be **DENIED**.

Dated: May 19, 2017                                         *s/Franklin L. Noel*
                                                            FRANKLIN L. NOEL
                                                            U.S. Magistrate Judge
                                                            United States District Court

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **June 2, 2017**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to

which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **June 2, 2017** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.