# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

                                                    Criminal No.  16-246 (JRT/FLN)

                              Plaintiff,

v.                                          **MEMORANDUM OPINION
                                                AND ORDER**

JEROME C. RUZICKA, SCOTT A.
NELSON, W. JEFFREY TAYLOR,
LAWRENCE W. MILLER, and
LAWRENCE T. HAGEN,

                              Defendants.

Gregory G. Brooker, Interim United States Attorney, and Benjamin F. Langner, Lola Velazquez-Aguilu, and Surya Saxena, Assistant United States Attorneys, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN  55415, for plaintiff.

John C. Conard, **JOHN C. CONARD PLLC**, 310 Fourth Avenue South, Suite 5010, Minneapolis, MN  55415, for defendant Jerome C. Ruzicka.

Casey T. Rundquist and William J. Mauzy, **MAUZY LAW PA**, 800 Hennepin Avenue, Suite 800, Minneapolis, MN  55403, for defendant W. Jeffrey Taylor.

Paul C. Engh, 200 South Sixth Street, Suite 420, Minneapolis, MN  55402, for defendant Lawrence W. Miller.

Kevin J. Short, 150 South Fifth Street, Suite 3260, Minneapolis, MN 55402, for defendant Lawrence T. Hagen.

Defendants Jerome Ruzicka, W. Jeffrey Taylor, Lawrence Miller, and Lawrence

Hagen have been charged in connection with the alleged embezzlement of funds from

Starkey Laboratories.  The Government and Defendants have brought motions in limine

in advance of trial to resolve a number of evidentiary disputes. The Court issues this Opinion and Order to address those motions.

## BACKGROUND

## I.    FACTUAL ALLEGATIONS

During all times relevant to the Indictment, Starkey Laboratories Inc. ("Starkey") was a Minnesota Corporation that developed, manufactured, and distributed hearing aids in the United States. (2d Superseding Indictment ("Indictment") ¶ 2, Sept. 21, 2016, Docket No. 215.) A majority of Starkey was privately owned by William F. Austin, who served as CEO, Chairman, and sole member of the Board of Directors. (*Id.* ¶ 3.)[1] Starkey was the primary U.S.-based customer of Sonion A.S. ("Sonion"), a Denmark corporation that manufactured and sold hearing-aid components. (*Id.* ¶ 6.)

Defendants were employees of Starkey and Sonion. Defendant Jerome Ruzicka was the President of Starkey, entrusted by Austin with the management of Starkey's operations. (*Id.* ¶¶ 7, 12.) Defendant Scott Nelson was the Chief Financial Officer of Starkey. (*Id.* ¶ 8.) Defendant Lawrence Miller was Senior Vice President of Human Resources of Starkey. (*Id.* ¶ 9.) Defendant Lawrence Hagen was an employee of Starkey. (*Id.* ¶ 11.) Defendant William Jeffrey Taylor was President of Sonion U.S. – the U.S. subsidiary of Sonion A.S. (*Id.* ¶ 10.)

---

[1] The remainder of Starkey (7% of total shares) was owned by employees through an employee stock option plan. (Indictment ¶ 3.)

Defendants are alleged to have conspired to embezzle and misappropriate money and business opportunities from Starkey and Sonion worth at least $20,000,000. (*Id.* ¶ 64.)

### A. Archer Consulting

Sometime during or before 2006, Ruzicka and Taylor founded Archer Consulting, Inc. (*Id.* ¶ 20.) Ruzicka allegedly caused Starkey to begin paying Archer Consulting a commission on sales of hearing-aid components from Sonion to Starkey, without Austin's knowledge. (*Id.* ¶ 22.) Taylor submitted invoices to Starkey for commission payments, which Ruzicka approved. (*Id.* ¶ 23.) After receiving payment from Starkey, Taylor and Ruzicka allegedly split the proceeds. (*Id.* ¶¶ 23, 25.) In 2010, Ruzicka and Taylor signed a Consulting Services Agreement whereby Starkey hired Archer Consulting to provide "consulting services for the purchase of transducers," including opinions on "technology, price, and delivery." (*Id.* ¶ 24.) Between 2006 and 2015, Ruzicka and Taylor allegedly stole $7,650,000 from Starkey using fraudulent invoices. (*Id.* ¶ 26.)

### B. Claris Investments and Archer Acoustics

Sometime around 2002, Ruzicka and Hagen founded Claris Investments, which Taylor later joined as an equal member. (*Id.* ¶ 28.) Ruzicka, Taylor, and Hagen represented to Sonion that Claris was owned and controlled by Starkey to obtain Starkey's discounted pricing on hearing-aid components. (*Id.* ¶ 27.) Taylor arranged for Sonion to sell these discounted components to other hearing-aid manufacturers. (*Id.*

¶ 29.)  Claris then invoiced these manufacturers for "commissions" based on these sales. (*Id.*)  Ruzicka, Taylor, and Hagen each allegedly received a share of proceeds from Claris.  (*Id.*)

Similarly, in 2009, Taylor and Ruzicka founded Archer Acoustics.  (*Id.* ¶ 31.) Taylor represented to Sonion that Archer Acoustics was affiliated with Starkey in order to take advantage of Starkey's discounted pricing on hearing-aid components.  (*Id.* ¶ 32.) Ruzicka, Taylor, and Hagen each allegedly received a share of proceeds from Archer Acoustics, totaling approximately $600,000.  (*Id.* ¶ 34.)

### C. Northland Hearing

In 2002, Austin founded Northland LLC to acquire and operate hearing-aid retailers.  (*Id.* ¶ 35.)  In 2006, allegedly without Austin's approval, Ruzicka and Nelson created Northland Hearing Centers, Inc., and transferred most of Northland LLC's assets to Northland Hearing Centers.  (*Id.* ¶ 36.)  To accomplish this transfer, Ruzicka and Nelson allegedly forged Austin's signature on certain documents.  (*Id.*)  Ruzicka and Nelson issued 100,000 shares of stocks in Northland Hearing Centers, including 51,000 shares to themselves and J.L. as restricted stock.  (*Id.* ¶ 37.)  In 2013, Ruzicka and Nelson caused Northland Hearing to purchase their unvested restricted stock for approximately $15,000,000.  (*Id.* ¶¶ 38-40.)  Nelson allegedly "grossed up" the payments to ensure that Starkey would cover the collective $7,000,000 tax liability of Ruzicka, Nelson, and J.L. (*Id.* ¶ 40.)   In 2014, Ruzicka and Nelson allegedly made additional payments to

themselves and J.L. to cover additional tax liabilities related to the stock purchase. (*Id.* ¶ 42.)

### D. Other Allegations

In July 2006, Ruzicka signed an employment agreement with Miller, guaranteeing Miller a "long-term services and loyalty bonus" of $50,000 each year from 2006 to 2015. (*Id.* ¶ 45.) In total, Miller received $88,250 in "loyalty" bonuses from 2006 to 2015, exceeding the allotted $50,000 per year. (*Id.*)

Under Ruzicka's 2006 employment agreement, Ruzicka was eligible to receive a bonus of $250,000 in any year in which Starkey grew by more than 10%. (*Id.* ¶ 49.) In 2015, Ruzicka allegedly sent Miller a falsified profit and loss statement, requesting that Miller process a bonus for Ruzicka in the amount of $250,000. (*Id.* ¶ 50.) Additionally, it is alleged that Ruzicka's bonus was "grossed up" by an additional $140,000 to cover Ruzicka's tax liability, even though the employment contract did not call for such an adjustment. (*Id.* ¶ 51.)

In 2014, Nelson had Starkey's accounting department issue a $200,000 check to an Edward Jones account owned by Ruzicka. (*Id.* ¶ 59.) Nelson recorded the payment as an "insurance" expense but Ruzicka used the money to pay his personal state and federal income taxes. (*Id.*) Neither Nelson nor Ruzicka recorded the $200,000 payment as compensation to Ruzicka. (*Id.* ¶ 60.)

In 2010, Starkey purchased a 2011 Jaguar vehicle for $119,188.77 for Ruzicka's use. (*Id.* ¶ 62.) Starkey paid the fees, insurance premiums, and other costs associated

with the Jaguar from 2010 to 2015.  (*Id.*)  In July 2015, Ruzicka transferred ownership of the Jaguar from Starkey to himself without paying Starkey for the vehicle.  (*Id.* ¶ 63.)

To conceal bonus payments and other benefits, Miller, Ruzicka, and Nelson allegedly manipulated Starkey's descending gross payroll reports.  (*Id.* at ¶¶ 46-48.)

## II.    PROCEDURAL BACKGROUND

Defendants have been charged with various counts of Conspiracy to Commit Mail Fraud and Wire Fraud (18 U.S.C. § 1349), Mail Fraud (18 U.S.C. § 1341), Wire Fraud (18 U.S.C. § 1343), Transactions Involving Fraudulent Proceeds (18 U.S.C. § 1957), and Making and Submitting a False Return (26 U.S.C. §7206(1)).  All five defendants initially pleaded not guilty.  On December 19, 2017, pursuant to a plea agreement, Nelson changed his plea to guilty to one count of Conspiracy in violation of 18 U.S.C. § 371.  (Nelson Plea Hr'g, Dec. 19, 2017, Docket No. 264; Nelson Plea Agreement, Dec. 19, 2017, Docket No. 266.)

On May 19, 2017, the Court issued an order denying *Brady* requests for materials held by Starkey and its private investigator, Waypoint, because the Court does not have authority to order the Government to seek an ex parte order for additional materials. (Order ("*Brady* Order"), May 19, 2017, Docket No. 162.)

**DISCUSSION**

## I.    GOVERNMENT'S MOTION

### A. Soundpoint, Audiometrix, and Hearing Fusion

The Court must decide whether to permit the introduction of evidence of interrelated conduct not explicitly mentioned in the Indictment – particularly conduct involving Soundpoint Audiology and Hearing Services LLC ("Soundpoint"), Audiometrix LCC, and Hearing Fusion.  (Gov. Trial Mem. & Mots. in Limine ("Gov. MILs") at 20-21, Dec. 14, 2017, Docket No. 244.)  Defendants argue that this evidence is barred by (1) Rule 404 and (2) their Sixth Amendment constitutional rights.  (Ruzicka's Resp. to Gov. MILs ("Ruzicka Resp.") at 1-7, Dec. 21, 2017, Docket No. 270.)

Rule 404(b)(1) states, "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  But Rule 404(b) does not "bar evidence that completes the story of the crime or explains the relationship of the parties" or intrinsic evidence of "crimes or acts which are 'inextricably intertwined' with the charged crime."  *United States v. Aldridge*, 561 F.3d 759, 766 (8th Cir. 2009) (quoting *United States v. Adams*, 401 F.3d 886, 899 (8th Cir. 2005)).  As the Eighth Circuit has elaborated:

> [W]here evidence of other crimes is 'so blended or connected, with the one[s] on trial as that proof of one incidentally involves the other[s]; or explains the circumstances; or tends logically to prove any element of the crime charged,' it is admissible as an integral part of the immediate context of the crime charged.   When the other crimes evidence is so

> integrated, it is not extrinsic and therefore not governed by
> Rule 404(b).

*United States v. Phelps*, 168 F.3d 1048, 1057-58 (8th Cir. 1999) (alterations in original)

(quoting *United States v. Swinton*, 75 F.3d 374, 378 (8th Cir. 1996)).

The United States claims that Ruzicka and Hagen co-owned Soundpoint, which was purchased by Starkey for $850,000. (Gov. MILs at 15-16.) Ruzicka allegedly received $230,000 from the sale but reported on his 2010 tax return that he only received $100,000. Count 27 of the indictment alleges that Ruzicka provided materially false information on his 2010 tax return. (Indictment ¶¶ 71-72.) In *Aldridge*, the Eighth Circuit concluded that evidence of a pyramid scheme was admissible because the scheme was "inextricably intertwined" with the filing of false tax returns. 561 F.3d at 766. The Court finds *Aldridge* to be instructive and concludes that Ruzicka's dealings with Soundpoint are intertwined with the charge of filing a false tax return.

The United States claims that Ruzicka used his position as Starkey's president to obtain consulting fees from Audiometrix and Hearing Fusion. (Gov. MILs at 18.) Although the alleged fraud stemming from Audiometrix and Hearing Fusion is not contained within the Indictment, the Court finds this fraud substantially similar to the fraudulent acts actually alleged. The Eighth Circuit's decision in *United States v. Holliman* is analogous. 291 F.3d 498 (8th Cir. 2002). In *Holliman*, the indictment alleged that the defendant had stolen thirteen vehicles, and the defendant was ultimately convicted of conspiracy to transport stolen vehicles in interstate commerce. *Id.* at 500-01. The district court admitted evidence that he had stolen other vehicles during the

conspiracy beyond the thirteen alleged in the indictment. *Id.* at 501-02. The Eighth Circuit held that the evidence "did not concern 'other crimes, wrongs, or acts' under Rule 404(b)," but was "admissible under the doctrine of *res gestae*, as this evidence was sufficiently connected to the charged crimes that it tended logically to prove elements of these crimes." *Id.* at 501-02 (citing *United States v. Riebold*, 135 F.3d 1226, 1229 (8th Cir. 1998)). Like the additional vehicles in *Holliman*, the Court finds that evidence of Ruzicka's scheme with respect to Audiometrix and Hearing Fusion is sufficiently connected to the crime of Conspiracy to Commit Mail Fraud and Wire Fraud.

The Court must also decide whether the admission of this evidence would run afoul of Defendants' Sixth Amendment rights "to be informed of the nature and cause of the accusation" against them. The Indictment makes no mention of Soundpoint, Audiometrix, or Hearing Fusion. "An indictment is sufficient if it contains the elements of the offense charged, lets the defendant know what he needs to do to defend himself, and would allow him to plead a former acquittal or conviction if he were charged with a similar offense." *United States v. Whitlow*, 815 F.3d 430, 433 (8th Cir. 2016). "Usually an indictment that tracks the statutory language is sufficient." *Id.* The Court concludes that the indictment meets these threshold Sixth Amendment requirements. *See id.*

The Court will therefore grant the Government's motion to permit the introduction of evidence of interrelated fraudulent conduct. Correspondingly, the Court will deny Ruzicka's motion to exclude evidence of Hearing Fusion. (Ruzicka's Mot. in Limine ("Ruzicka MILs") at 30-32, Dec. 14, 2017, Docket No. 250.)

### B. Austin and Sawalich

The Court must decide whether to exclude certain evidence about Austin and Brandon Sawalich's conduct. (Gov. MILs at 21-24.)

#### 1. Harassment

The Court must decide whether to exclude impeachment evidence that female employees were awarded bonuses, employment contracts, compensation packages, or insurance contracts, to quell harassment complaints against Austin and Sawalich. The Court cannot ascertain the relevance of this evidence without first viewing it. The Court will order Defendants to produce the evidence related to harassment for the Court's *in camera* review.

#### 2. Austin's Divorce Settlement

The Court must decide whether to exclude evidence related to Austin's divorce settlement.[2] The Court cannot ascertain the relevance of this evidence without first viewing it. The Court will order Defendants to produce the evidence related to the settlement for the Court's *in camera* review.

#### 3. Donated Hearing Aids

The Court must decide whether to exclude evidence that the Starkey Foundation provided defective hearing aids to impoverished individuals in other countries. The Court cannot ascertain the relevance of this evidence without first viewing it. The Court

---

[2] It is not clear to the Court whether this settlement stems from a divorce case, employment case, or fraud case. *In camera* review will help the Court clarify this fact.

will order Defendants to produce evidence related to the donated hearing aids for the Court's *in camera* review.

### 4.  Austin's Statements

The Court must decide whether to exclude two statements made by Austin.  First, Austin allegedly said, "The only mistake that the Nazis made was keeping records." (Gov. MILs at 22.)  While the Court acknowledges that this statement contains some probative value about Austin's views on recordkeeping, the Court finds that this probative value is outweighed by unfair prejudice resulting from the outrageously anti-Semitic nature of the comment.  *See* Fed. R. Evid. 403.  Of course, Defendants are otherwise permitted to question witnesses about Austin's views on recordkeeping.

Second, Austin allegedly said, "Everyone deserves a good f[uc]king once in a while."  (Gov. MILs at 22.)  Defendants have not explained why this statement is probative, and the Court cannot ascertain to what issue it relates.  Nevertheless, the Court concludes that this statement is highly prejudicial despite whatever probative value it may have.  *See* Fed. R. Evid. 403.

Accordingly, the Court will grant the Government's motions to exclude both of these statements made by Austin.

### 5.  Austin's Mental State

The Court must decide whether to exclude evidence that Austin believed that he had one or more conversations with wildlife, angels, or other ethereal beings.  "[A] tendency to hallucinate is so like a direct physical impairment [to the witness's

-11-

perception] as to fall well within the old-fashioned rule," and therefore "a court must not keep such evidence from the jury." *United States v. Pryce*, 938 F.2d 1343, 1346 (D.C. Cir. 1991). The Government argues that these are not hallucinations but rather religious beliefs and are inadmissible as impeachment evidence. *See* Fed. R. Evid. 610. The Government has stretched the definition of "religious beliefs" further than it may go. Not all of these purported hallucinations relate to religious beliefs. For example, Defendants claim that "Austin has told multiple people that he has had back-and-forth conversations in English with deer that he shot dead while hunting." (Ruzicka Resp. at 4.) The Court finds that the evidence the Government seeks to exclude is not prohibited by Rule 610. The Court will therefore deny the Government's motion to exclude evidence of Austin's discussions with wildlife, angels, or other ethereal beings.

### C. Statements By Non-Testifying Witnesses

The Court must decide whether to permit the introduction of e-mails and documents from non-testifying witnesses "to demonstrate the effect of those communications on the particular defendant involved in the communication, to provide context for the defendant's responses, and to show the defendant's knowledge, intent, and lack of mistake." (Gov. MILs at 25.) Generally, e-mails sent by non-testifying witnesses are not hearsay so long as the statements are not offered for the truth of the matter asserted. *See, e.g.*, *United States v. Cooke*, 675 F.3d 1153, 1156 (8th Cir. 2012). The Government, however, has not provided any such e-mails or documents to the Court, so the Court cannot evaluate whether these statements (1) are relevant, (2) are unfairly

prejudicial, (3) are not hearsay, and/or (4) present Confrontation Clause issues. The Court will therefore defer its ruling on the admissibility of any such statements until presented at trial.

### D. Defendants' Out-of-Court Statements

The Court must decide whether to prevent the Defendants from offering their own out-of-court statements for the truth of the matter asserted. (Gov. MILs at 27.) The Court cannot evaluate whether these statements are hearsay without first seeing or hearing these statements. The Court will defer its ruling on the admissibility of any such statements until presented at trial.

### E. Defendants' Recorded Statements

The Court must decide whether to allow the entirety of recorded statements made by Defendants. (Gov. MILs at 28.) The Government argues that Defendants should be required to specify how excluded portions of the recordings are relevant to the issues at trial. Rule 106 provides, "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part – or any other writing or recorded statement – that in fairness ought to be considered at the same time." The Court cannot determine which portions of the recordings are relevant without the recordings. The Court will order the parties to produce the recordings for the Court to assess its admissibility. If the Government has particular objections to portions of the recordings, it should submit those objections.

### F. Summary Witnesses and Charts

The Court must decide whether to allow the Government to use summary witnesses and summary charts.  (Gov. MILs at 34.)

### 1.    Summary Witnesses

The Government has requested permission to call law-enforcement agents to testify as summary witnesses during its case-in-chief.

"[T]he testimony of a summary witness may be received so long as she bases her summary on evidence received in the case and is available for cross-examination." *United States v. Ellefsen*, 655 F.3d 769, 780 (8th Cir. 2011) (quoting *United States v. King*, 616 F.2d 1034, 1041 (8th Cir. 1980)).  The Government may use a summary witness "for summarizing voluminous records" but may not use a summary witness for "summarizing and organizing the case for the jury" as a rebuttal witness.  *United States v. Nguyen*, 504 F.3d 561, 572 (5th Cir. 2007).  Nor may the summary witness make conclusions about the elements of the accused crimes.  *Id.* at 572.

Courts treat the use of summary witnesses skeptically for fear that they will be used by the Government "to present its case in a tidy package at the end of its presentation of evidence."  *United States v. Flores-De-Jesus*, 569 F.3d 8, 19 (1st Cir. 2009).  But summary witnesses are often used in cases involving complex financial crimes, such as insurance fraud, tax evasion, and wire fraud.  *See, e.g., Ellefsen*, 655 F.3d at 780; *United States v. Lemire*, 720 F.2d 1327 (D.C. Cir. 1983).

This case involves the sort of financial crimes where a jury may benefit from summary witnesses. However, the Court warns the Government about the limitations of summary witnesses. First, the Court will provide a limiting instruction about the scope of summary-witness testimony. Second, summary witnesses cannot "testify about anything other than what was already in evidence"; in other words, the Government cannot use summary witnesses as conduits to introduce otherwise inadmissible evidence. *Lemire*, 720 F.2d at 1349. Third, summary witnesses may not draw legal conclusions or expert opinions from the evidence, but may introduce "routine computations and cull[] through . . . documents to eliminate confusing and extraneous evidence." *Id.* at 1350. Fourth and finally, the Defendants will of course be permitted to object to particular questions asked of summary witnesses at trial.

With these limitations in mind, the Court will grant the Government's motion to allow the use of summary witnesses.

### 2.    Summary Charts

The Government has requested permission to use summary charts to summarize financial documents. Rule 1006 permits the "use [of] a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in Court." The proponent "must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place." Fed. R. Evid. 1006. Defendants assert that they have not had an opportunity to review these charts or the corresponding evidence upon which they are based. The Court

will therefore defer ruling on this motion until the Defendants are permitted to review both the evidence and charts as required by Rule 1006.

## II.    RUZICKA'S MOTIONS

### A. William Austin's Duties of Care

The Court must decide whether to permit introduction of evidence about Austin's legal duty of care to Starkey and its shareholders.  (Ruzicka MILs at 1-5.)   Under Minnesota law, corporate officers owe a duty of care to their company.  *See* Minn. Stat. §§ 302A.361, 302A.251.   Ruzicka argues that Austin's duty of care is relevant to Ruzicka's good-faith defense because it makes it more likely that Austin actively managed Starkey and remained informed of its activities.  *Cf. United States v. Brown*, 478 F.3d 926, 928 (8th Cir. 2007) ("[O]ne who acts with honest intentions cannot be convicted of a crime requiring fraudulent intent." (quoting *United States v. Sherer*, 652 F.2d 334, 338 (8th Cir. 1981)).   In essence, Ruzicka seeks to argue that Austin was negligent in not discovering the alleged conduct.

Courts frequently exclude evidence that places the blame on the purported victim of fraud.  *See, e.g.*, *United States v. Serfling*, 504 F.3d 672, 679 (7th Cir. 2007) ("[T]he perpetrator of a fraud may not defend himself by blaming the victim for being duped.") Neither the statute itself nor Austin's duties under it are probative of Austin's actual knowledge of Defendant's fraudulent conduct.  Moreover, the Court is concerned that admitting evidence of Austin's duty of care would confuse the jury by suggesting that any failure to abide by this duty of care excused Defendants' fraudulent conduct.  *See*

Fed. R. Evid. 403. Accordingly, the Court will deny Ruzicka's motion to permit the introduction of evidence about Austin's duty of care.

### B. 2013 Descending Gross Salary Report

The Court must decide whether to exclude Starkey's 2013 Descending Gross Salary Report. (Ruzicka MILs at 5-6.) Ruzicka argues that the 2013 Report cannot be authenticated under Rule 901, which requires the proponent of evidence to "produce evidence sufficient to support a finding that the item is what the proponent claims it is." The Court is satisfied – based on the nature of the article, the circumstances surrounding its preservation and custody, and the likelihood of others tampering with it – that the Government will be able to authenticate the 2013 Report. *See United States v. Weeks*, 645 F.2d 658, 660 (8th Cir. 1981). In particular, the Government has evidence that the 2013 Report was created by Nelson, that Nelson e-mailed the report to Miller, and that Miller further altered the report. The version saved to Miller's computer is identical to the version found on Ruzicka's desk. (*See* Gov. Omnibus Resp. ("Gov. Resp.") at 3-4, Dec. 21, 2017, Docket No. 272.) Ruzicka is free to cross-examine the Government's witnesses about how this document was discovered and preserved. The Court will therefore deny Ruzicka's motion to exclude the 2013 Report.

### C. Extramarital Relationship

The Court must decide whether to exclude evidence about Ruzicka's extramarital relationship with his executive assistant, Julie Miller. (Ruzicka MILs at 9.) The Government has agreed not to introduce the evidence at this time and will seek the

-17-

Court's permission to introduce evidence on this topic should it become relevant. The Court will therefore grant Ruzicka's motion to exclude evidence about the relationship.

### D. Burden-Shifting Questions

The Court must decide whether to prevent the Government from using questions to shift the burden of producing evidence to Defendants. (Ruzicka MILs at 11-12.) The Government "must refrain from making burden-shifting arguments which suggest that [a] defendant has an obligation to produce any evidence or to prove innocence." *United States v. Simon*, 964 F.2d 1082, 1086 (11th Cir. 1992). The Government has stated that it "does not intend to use any burden-shifting hypothetical questions." (Gov. Resp. at 5.) The Court will therefore grant Ruzicka's motion to preclude the Government from using burden-shifting questions or arguments.

### E. Testimony of Eric Feld

The Court must decide whether to exclude opinions of lay witness Eric Feld about the valuation of Northland Hearing's business and assets. Lay witnesses may only offer opinions "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). "The opinion testimony of an officer of a business as to value or projected profits or as to damage to the business, without qualifying the officer as an expert" is admissible because "of the particularized knowledge that the witness has by virtue of his or her position in the business." *Allied Sys., Ltd. v. Teamsters Auto. Trans. Chauffeurs*, 304 F.3d 786, 792 (8th Cir. 2002) (quoting Fed. R. Evid. 701, Advisory Committee's Note (2000)). The Court assumes that

the Government will be able to show that Feld served as Starkey's Retail Controller and, therefore, acquired knowledge about the value of Northland Hearing by virtue of his position at Starkey.  The Court will therefore deny Ruzicka's motion to exclude the testimony of Eric Feld.

### F.  "Grossing Up"

The Court must decide whether to exclude argument that "grossing up" bonuses is illegal or improper.  (Ruzicka MILs at 16-17.)  Ruzicka is correct that "grossing up" itself is not illegal.  However, the indictment alleges that particular instances of "grossing up" constituted part of Defendant's fraudulent scheme.  For example, according to the indictment, Ruzicka received a grossed-up bonus amounting to $390,000, even though his bonus was contractually capped at $250,000.  (Indictment ¶¶ 50-51.)  The Court will therefore grant Ruzicka's motion to the extent that "grossing up," without more, is not illegal.  However, the Court's order shall not prohibit the Government from arguing that Defendants' "grossing up" of bonuses constituted fraud.

### G. Statements Made By Witnesses Not Called at Trial

The Court must decide whether to exclude prior testimonial statements of individuals not called as witnesses because such evidence would violate the Confrontation Clause of the United States Constitution.  (Ruzicka MILs at 17-19.)  The Confrontation Clause prohibits the Government from introducing "testimonial" statements made by individuals who are not present for cross-examination.  *Crawford v. Washington*, 541 U.S. 36, 53 (2004).  The Court will therefore grant Ruzicka's motion to

the exclude prior testimonial statements of individuals not called as witnesses to the extent consistent with this Opinion.

### H. Ruzicka's Wealth or Class

The Court must decide whether to exclude evidence of Ruzicka's wealth or class under Rule 403. (Ruzicka MILs at 19-20.) The Government agrees that it will not introduce extraneous evidence related to Ruzicka's wealth or class. The Court agrees that evidence of wealth or class would be unfairly prejudicial but notes that certain evidence in this case necessarily relates to Ruzicka's earnings. *See* Fed. R. Evid. 403. The Court will therefore grant Ruzicka's motion to exclude evidence of Ruzicka's wealth or class but the Court's order will not preclude the parties from introducing evidence relevant to the fraudulent conduct alleged in this case.

### I.    Ruzicka's Fiduciary Duties

The Court must decide whether to exclude reference to Ruzicka's fiduciary duties, breach of such duties, or any failure to provide honest services. (Ruzicka MILs at 20-21.) Ruzicka correctly argues that he was not charged with the failure to provide honest services under 18 U.S.C. § 1346, but only mail and wire fraud, which requires proof that Ruzicka sought to obtain money, property, or property rights. 18 U.S.C. §§ 1341, 1343. But "evidence that the defendant knew his conduct was unethical or wrong is relevant to show a defendant's intent to defraud." *United States v. Wirtz*, No. 04-18, 2004 WL 2271745, at *3 (D. Minn. 2004). Fraudulent intent may be proven by demonstrating that the defendant violated ethics or laws regarding business transactions – such as a fiduciary

duty to a corporation. *See United States v. Steffen*, 687 F.3d 1104, 1116 (8th Cir. 2012) (holding that nondisclosure in the face of a duty to disclose may show fraudulent intent); *see also United States v. Fumo*, 655 F.3d 288, 302-03 (3d Cir. 2011) (holding that violation of state Ethics Act showed fraudulent intent).  The Court concludes that evidence of the existence and breach of a fiduciary duty is relevant because it is probative of fraudulent intent.  An instruction that evidence of breach of fiduciary duties may only be considered for purposes of evaluating intent will readily address Ruzicka's concerns. The Court will therefore deny Ruzicka's motion to exclude reference to Ruzicka's fiduciary duties or breach of such duties.

### J.  Counter-factual Arguments

The Court must decide whether to exclude "counter-factual arguments" under Rule 403.  (Ruzicka MILS at 21-22.)  The Court  fails to understand the purpose of this motion or what variety of arguments it would exclude.  The Court will therefore deny the motion.  To the extent that Ruzicka believes the Government is raising a counter-factual argument at trial, he is free to object at that time.

### K. Confidentiality of Business Practices

The Court must decide whether to exclude argument that the confidentiality of Starkey's business practices is evidence of wrongdoing.  (Ruzicka MILs at 23-24.)  The Government agrees that keeping business practices confidential is not itself criminal. (Gov. Resp. at 4.)  Nevertheless, the Eighth Circuit has recognized that "acts taken to conceal, create a false impression, mislead, or otherwise deceive in order to 'prevent the

other party from acquiring material information' may demonstrate a scheme to defraud" under Sections 1341 and 1343. *Steffen*, 687 F.3d at 1115 (quoting *United States v. Colton*, 231 F.3d 890, 898 (4th Cir. 2000)). Whether the Defendants concealed their conduct to intentionally hide their alleged scheme or merely to comply with Starkey's business practices is precisely the factual issue to be resolved at trial. The Court will grant Ruzicka's motion to the extent that the Defendants' acting in accordance with confidential business practices, without more, is not illegal. However, the Court's order shall not prohibit the Government from arguing that Defendants' concealment of their conduct demonstrates a scheme to defraud.

### L.  Ruzicka's Company Car

The Court must decide whether to exclude evidence about Ruzicka's acquisition of his company car, a 2011 Jaguar. (Ruzicka MILs at 25-26.) Ruzicka makes two arguments.

First, Ruzicka argues that the mailing of the car's title cannot be used for a conviction of mail fraud because the mail-fraud statute may not be invoked where the mailings are legally compelled. *See United States v. Boyd*, 606 F.2d 792, 794 (8th Cir. 1979). The Court has previously dismissed this argument. (R&R at 9, May 22, 2017, Docket No. 168; Order Adopting R&R, June 4, 2017, Docket No. 175.)

Second, Ruzicka argues that evidence of his company car should be excluded under Rule 403 because it was "Starkey's corporate policy to provide its executives with company cars" and "to depreciate the value of company cars to zero." (Ruzicka MILs at

26-27.)  The Court finds that this is a factual dispute best resolved at trial and is not likely to mislead or confuse the jury.  *See* Fed. R. Evid. 403.  The Court will deny Ruzicka's motion to exclude evidence of his company car.

### M. Non-existence of Documents

The Court must decide whether to exclude argument that certain documents do not exist.  (Ruzicka MILs at 27-30.)  Ruzicka argues that Rule 403, the ABA Model Rules of Professional Conduct, and the ABA Standards for Criminal Justice prohibit the Government from arguing that certain documents do not exist because the Government obtained most of its documents from Starkey and Waypoint rather through its own independent investigation.  The Government has a good-faith belief that certain documents do not exist because those documents were not discovered in either its own investigation or Starkey's internal investigation.  Whether documentary evidence exists of Defendant's conduct is relevant to the issue of Defendants' intent.  Defendants can best protect their interests through aggressive cross-examination of the Government's witnesses as to the nature and intent of the investigations.  The Court therefore finds that the probative value of whether certain documents exist outweighs any risk of unfair prejudice.  Accordingly, the Court will deny Ruzicka's motion to exclude argument that certain documents do not exist.

### N. Renewed *Brady* Motion

The Court must decide whether to grant Ruzicka's renewed *Brady* motion to order disclosure of exculpatory evidence that may be held by Starkey and Waypoint.

(Renewed Mot. for *Brady* Material, Dec. 14, 2017, Docket No. 253.)  Ruzicka argues that Starkey and Waypoint are members of the Government's prosecution team and, therefore, are required to produce exculpatory evidence.[3]

The facts of this case (as alleged by Ruzicka) are similar to those in *United States v. Josleyn*, 206 F.3d 144 (1st Cir. 2000).  American Honda's lawyers conducted an internal investigation and "then made a presentation and turned over a 'factual proffer' document" containing "a discussion of the relevant facts and credibility of certain involved individuals." *Id.* at 152.  American Honda's lawyers met with the prosecution multiple times and created an agreement securing American Honda's cooperation with the government.  *Id.*  Two executives of American Honda were convicted of fraud, racketeering, and conspiracy.  *Id.* at 147.  The defendants sought a new trial because, "although the government literally did not know of the existence of the evidence at the time of the [] criminal case, American Honda did." *Id.* at 152.  The prosecution even went so far as to refer to American Honda's lawyers "as part of his 'team' of 'prosecutors working on this case,'" and the First Circuit accepted the assertion that American Honda's lawyers helped the prosecution.  *Id.*  Nevertheless, the First Circuit concluded that there was no *Brady* violation because "[t]he government did not have access to the

---

[3] This motion is the latest in a long line of motions by Defendants to obtain evidence from Starkey and Waypoint.  Magistrate Judge Franklin Noel has already denied Ruzicka's effort to compel production of documents held by Starkey and/or Waypoint because neither entity constitutes a member of the prosecution team.  (*Brady* Order at 6.)  Ruzicka did not object to the Magistrate Judge's order but instead renewed his *Brady* motion.  At best, Ruzicka's "renewed" *Brady* motion constitutes a very untimely objection to the Magistrate Judge's order and should be denied as such.  *See* D. Minn. LR 72.2(a).

evidence at issue and did not suppress it either willfully or inadvertently." *Id.* at 153. The First Circuit elaborated on why American Honda was not a member of the prosecution team:

> American Honda, despite the prosecutor's hyperbole, was not part of the prosecution team. While prosecutors may be held accountable for information known to police investigators, we are loath to extend the analogy from police investigators to cooperating private parties who have their own set of interests. Those private interests, as in this case, are often far from identical to—or even congruent with—the government's interests.

*Id.* at 153-54 (citation omitted).

Ruzicka seeks to cast Starkey's involvement in this case as more egregious than American Honda's involvement in *Josleyn.* It is not. Even if Starkey and Waypoint have withheld information from the Government, *Brady* does not compel them to produce this information to Starkey. Starkey and Waypoint may have assisted the Government in its investigation but they are not members of the prosecution team. *See id.* Starkey and the Defendants are entangled in civil litigation and, in some of these actions, Starkey is accused of wrongdoing. Starkey's interests are "far from identical" to the Government's interests. *Id.* The Court need not speculate whether Starkey and Waypoint have withheld evidence and, if they have withheld evidence, whether such evidence might be exculpatory.

The Court will therefore deny Ruzicka's renewed *Brady* motion.

### O. Joinder of Previous Motions

The Court must decide whether to allow Ruzicka to join the following motions of his co-Defendants:

1. Miller's Proposed Voir Dire (Docket No. 245),
2. Miller's Proposed Jury Instructions (Docket No. 246),
3. Taylor's Motion to Exclude Lay Opinion (Docket No. 254),
4. Taylor's Motion to Exclude Unfairly Prejudicial Evidence (Docket No. 255),
5. Taylor's Proposed Jury Instructions (Docket No. 256),
6. Taylor's Motion to Preserve *Brady* Materials and *Jenks* Materials (Docket No. 257), and
7. Taylor's Motion to Introduce Exculpatory Evidence (Docket No. 258).

(Mot. to Join Previous Mots., Dec. 21, 2017, Docket No. 269.)  To join another party's motions, the moving party must "1) specifically identify in his motion papers each co-defendant motion he is seeking to join; 2) to allege a basis for standing in each motion; and 3) to allege his legal and factual basis for joining in each motion."  *United States v. Svihel*, No. 15-190, 2016 WL 1212364, at *6 (D. Minn. Feb. 25, 2016) (R&R); *adopted by* 2016 WL 1222231 (D. Minn. Mar. 28, 2016).[4]  Ruzicka has identified the motions he wishes to join, but he has alleged neither any basis for standing nor his legal and factual basis for joining each motion.  The Court will therefore deny Ruzicka's motion to join previous motions of Miller and Taylor.

_____

[4] This practice is consistent with that of other courts.  See *United States v. Harvey*, No. 12-113, 2014 WL 657595, at *3 (W.D. Pa. Feb. 20, 2014) (denying motion for failing to explain why the party seeking to join motions "is similarly situated to the moving party"); *United States v. Johnson*, No. 08-466, 2008 WL 5111166, at *3 (N.D. Ill. Dec. 3, 2008).

### III.    TAYLOR'S MOTIONS

#### A. Lay Opinions

The Court must decide whether to exclude Government witnesses from offering opinions about ethics, legality, or propriety of business arrangements.  (*See* Mot. to Exclude Lay Op., Dec. 14, 2017, Docket No. 254.)  Taylor argues that the admission of such opinions would be impermissible expert testimony by lay witnesses, citing Federal Rule of Evidence 701(c).  But lay opinion testimony may be allowed **after** the proponent of a lay witness lays a foundation showing that the witness has relevant "personal knowledge or perceptions based on experience."  *In re Air Crash at Little Rock Ark. on June 1, 1999*, 291 F.3d 503, 515-16 (8th Cir. 2002).  In particular, a lay witness with significant experience in business may often testify about knowledge obtained by virtue of his or her position within a company.  *See Allied Sys., Ltd.*, 304 F.3d at 792 (quoting Fed. R. Evid. 701, Advisory Committee's Note (2000)).  The Court will therefore deny Taylor's motion to exclude lay opinion testimony about business ethics or the legality or propriety of business relationships, assuming proper foundation is laid.

#### B. Taylor's Employment Arrangements

The Court must decide whether to exclude evidence of Taylor's employment contracts with Sonion as irrelevant, prejudicial, and confusing to the jury.  (*See* Mot. to Exclude Unfairly Prejudicial Evid. at 5-8, Dec. 14, 2017, Docket No. 255.)  Taylor argues that the existence of a fiduciary duty to Sonion confuses the issues of mere nondisclosure (which may be sufficient for an honest services fraud conviction) and

active concealment (which is necessary for a material fraud conviction). In short, Taylor expresses a similar concern to Ruzicka – that a jury might convict him for material fraud based on finding a breach of fiduciary duty to Sonion.

As above, however, the existence and breach of a fiduciary duty is probative of intent to defraud. Although Taylor argues that there is no direct, logical relationship between his employment contract with Sonion and the fraud alleged, *cf. Fumo*, 655 F.3d at 302, the Government argues that Taylor was self-dealing at Sonion's expense and/or Starkey's expense and that the breach of Taylor's fiduciary duties shows his fraudulent intent. Taylor's employment contract is evidence of his duties owed to Sonion and is probative enough to clear the low bar of relevance. And, as above, prejudice may be averted by an instruction making clear that evidence of a breach of fiduciary duty may not sustain a conviction for material fraud and may only be considered for purposes of evaluating intent.

While Taylor is correct that the Government may not advance a propensity argument that a breach of duty to Sonion means he breached some duty to Starkey, it appears that all parties agree that no such duty exists – and, even if it did, a jury instruction would address any resulting issue.

The Court will therefore deny Taylor's motion to exclude the specifics of his employment relationships with Sonion.

### C.  Taylor's Divorce

The Court must decide whether to exclude evidence of Taylor's divorce and testimony that Taylor was a "womanizer" on the grounds that it is trivial, irrelevant, prejudicial, and would confuse and delay the trial.  (*See* Mot. to Exclude Unfairly Prejudicial Evid. at 9.)  The Court finds that this evidence would be prejudicial and therefore will grant Taylor's motion to exclude evidence of his divorce and testimony about whether he was a "womanizer."  *See* Fed. R. Evid. 403.

### D.  *Brady* Motion

The Court must decide whether to grant Taylor's renewed *Brady* motion and *Jencks* materials request for disclosure of three particular statements.  (*See* Mot. to Preserve *Brady* Materials & *Jencks* Materials, Dec. 14, 2017, Docket No. 257.)  In particular, Taylor requests that the Government disclose (1) a 2015 statement by Austin, (2) a recorded statement by Diter Borowski, and (3) a statement by Lou Raiola.  (*Id.* at 1.) Taylor indicated that the Government was working to resolve this issue and that he hoped to withdraw the motion once the statements were produced.  (*Id.* at 2.)  Taylor has not withdrawn his motion, and the Court is not aware of whether Taylor's demand has been satisfied.  The Government has not responded to Taylor's motion and therefore the Court lacks confirmation of whether it will in fact disclose these statements.  Nevertheless, the Court cannot ascertain whether these statements are required disclosures under *Brady* without seeing the statements.  Magistrate Judge Noel has previously ordered the Government to comply with *Brady*.  (Order at 11, May 19, 2017, Docket No. 164.)

Taylor indicated in his motion that the Government is/was seeking to produce these documents, and the Court is confident that the Government will comply with its *Brady* obligations. Accordingly, the Court will deny Taylor's motion without prejudice.

### E. Jesper Lilledal

The Court must decide whether to allow for two-way video conference testimony by witness Jesper Lilledal of Denmark, and a voluntary Rule 15 deposition of Lilledal to preserve his testimony in the event of technical difficulties. (*See* Mot. to Introduce Exculpatory Evid., Dec. 14, 2017, Docket No. 258.) It is undisputed that Lilledal is unavailable to testify in person at trial. Expressing concern about cost and complexity, the Government opposes the deposition. However, to the extent that Taylor and his co-defendants waive their Sixth Amendment right to a face-to-face confrontation of the witness and the right to appeal on the ground of possible infirmities with regard to Lilledal's oath,[5] the Government does not oppose the motion for two-way video testimony. At the motions hearing, Defendants suggested that they are willing to waive those rights. As such, to the extent that Defendants waive those two rights on the record prior to Lilledal's testimony, the Court will grant Taylor's motion to admit two-way video conference testimony of Jesper Lilledal, and deny as moot the motion to take a Rule 15 voluntary deposition.

---

[5] The Government submits that, based on limited research into the matter, deponents in a voluntary deposition in Denmark cannot be prosecuted for perjury under Danish law.

## F. Jørn Mørkeberg Nielsen

The Court must decide whether to permit the introduction of statements made by Jørn Mørkeberg Nielsen of Denmark during an interview with two FBI agents, as recorded in a FD-302 interview summary report.  (*See* Mot. to Introduce Exculpatory Evid.)  Taylor argues for admission under the residual exception to the hearsay rule, which allows admission of statements that would otherwise be hearsay if:

> (1) the statement has equivalent circumstantial guarantees of trustworthiness;
>
> (2) it is offered as evidence of a material fact;
>
> (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
>
> (4) admitting it will best serve the purposes of these rules and the interests of justice.

Fed. R. Evid. 807.  The Court finds that each of these elements is met with regard to the 302 interview report.  First, the statements have equivalent circumstantial guarantees of trustworthiness:  Mørkeberg Nielsen was formally interviewed by two FBI agents with the assistance of counsel during a criminal investigation (ergo under threat of prosecution for false statements), and he had no incentive to lie to protect Taylor – indeed, the key exculpatory statement was arguably against the financial interests of his employer.  Second, the statements are material because Mørkeberg Nielsen's indication that he would likely have approved the deal as Taylor's supervisor tends to refute the Government's assertion that the deal was based on Taylor's false claims.  Third, the statements are more probative than other evidence because Mørkeberg Nielsen was

Taylor's supervisor at the relevant time.  And fourth, admission serves the interests of justice because it tends to vindicate Taylor's Sixth Amendment right to put on a defense.

The Government submits that there are no cases where FBI agent reports have been admitted into evidence under the residual exception.  *But see United States v. Lyon*, 567 F.2d 777, 784 (8th Cir. 1977); *In re Drake*, 786 F. Supp. 229, 234 (E.D.N.Y. 1992); *United States v. Thevis*, 84 F.R.D. 57, 65 (N.D. Ga. 1979).[6]  In *Lyon*, the shoe was on the other foot:  the government sought admission of statements via an FBI agent's interview record.  567 F.2d at 784.  The Eighth Circuit upheld the trial court's decision to permit the agent to read a portion of his report into the record under the residual exception,[7] finding it to be trustworthy in light of the agent's detailed testimony about how the report was created.  *Id.*

As such, the Court will grant Taylor's motion to admit the statements of Jørn Mørkeberg Nielsen as recorded in the 302 Report.  In light of the fact that the Government has stated that the two interviewing agents are available to testify at trial, the Court will order them to do so and order the parties to meet and confer about such testimony.  The Court notes that any questioning that may evince information outside the scope of the statements contained in the 302 Report will require preliminary discussion with the Court outside the hearing of the jury.

---

[6] *Cf. MSC Mediterranean Shipping Co. SA, Geneva v. Metal Worldwide, Inc.*, 884 F. Supp. 2d 1277, 1282 (S.D. Fla. 2012) (admitting Indian Customs agent report); *Steinberg v. Obstetrics-Gynecological & Infertility Grp., P.C.*, 260 F. Supp. 2d 492, 497 (D. Conn. 2003) (admitting lawyer's letter on behalf of her client).

[7] At the time of *Lyon*, the residual exception was located at Rule 804(b)(5).  It has since been moved to Rule 807.

# ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    Government's Motion in Limine [Docket No. 244] is **GRANTED in PART and DENIED in PART** as follows:

    a.    Government's motion to permit evidence of interrelated fraudulent conduct is **GRANTED**.

    b.    Government's motion to exclude evidence related to harassment complaints against Austin and Sawalich is **DEFERRED**.  Defendants are **ORDERED** to produce evidence related to the harassment complaints for *in camera* review.

    c.    Government's motion to exclude evidence related to Austin's divorce settlement is **DEFERRED**.  Defendants are **ORDERED** to produce evidence related to Austin's divorce settlement for *in camera* review.

    d.    Government's motion to exclude evidence about defective hearing aids is **DEFERRED**.  Defendants are **ORDERED** to produce evidence related to the defective hearing aids for *in camera* review.

    e.    Government's motion to exclude specific statements made by Austin is **GRANTED**.

    f.    Government's motion to exclude evidence about Austin's mental state is **DENIED**.

g.  Government's motion to permit the introduction of statements by non-testifying witnesses is **DEFERRED**.

h.  Government's motion to prevent Defendants from introducing their own out-of-court statements is **DEFERRED**.

i.  Government's motion to require Defendants to specify their purpose for offering additional portions of Defendants' recorded statements is **DEFERRED**.  Parties are **ORDERED** to produce the recorded statements for the Court's review.

j.  Government's motion to permit the use of summary witnesses at trial is **GRANTED**.

k.  Government's motion to permit the use of summary charts at trial is **DEFERRED**.

2.  Defendant Jerome Ruzicka's Motion in Limine [Docket No. 250] is **GRANTED IN PART and DENIED IN PART** as follows:

a.  Ruzicka's motion to permit the introduction of evidence related to Austin's duty of care is **DENIED**.

b.  Ruzicka's motion to exclude the 2013 Descending Gross Salary Report is **DENIED**.

c.  Ruzicka's motion to exclude evidence of Ruzicka's extramarital relationship  is **GRANTED**.

d.  Ruzicka's motion to prevent the Government from presenting burden-shifting questions or arguments is **GRANTED**.

      e.  Ruzicka's motion to exclude testimony from Eric Feld is **DENIED**.

      f.  Ruzicka's motion to exclude arguments that "grossing up" bonuses is illegal is **GRANTED**.

      g.  Ruzicka's motion to exclude testimonial statements made by witnesses who are not called at trial is **GRANTED**.

      h.  Ruzicka's motion to exclude evidence of Ruzicka's wealth or class is **GRANTED**.

      i.  Ruzicka's motion to exclude mention or argument related to his fiduciary duties, breach of such duties, or related failure to provide honest services is **DENIED**.

      j.  Ruzicka's motion to exclude "counter-factual" arguments is **DENIED**.

      k.  Ruzicka's motion to exclude arguments that the confidentiality of corporate business practices is illegal is **GRANTED**.

      l.  Ruzicka's motion to exclude evidence of his company car is **DENIED**.

      m.  Ruzicka's motion to exclude arguments or question that presumes the non-existence of documents is **DENIED**.

      n.  Ruzicka's motion to exclude evidence relating to Hearing Fusion is **DENIED**.

3.    Defendant Jerome Ruzicka's Second Motion for Release of Brady Materials [Docket No. 253] is **DENIED**.

4.    Defendant Jerome Ruzicka's Motion to Join Previous Motions by Lawrence Miller and W. Jeffrey Taylor [Docket No. 269] is **DENIED**.

5.    Defendant W. Jeffrey Taylor's Motion to Exclude Lay Opinion [Docket No. 254] is **DENIED**.

6.    Defendant W. Jeffrey Taylor's Motion to Exclude Unfairly Prejudicial Evidence [Docket No. 255] is **GRANTED in part and DENIED in part** as follows:

    a.    Taylor's motion to exclude the specifics of his employment arrangement is **DENIED**.

    b.    Taylor's motion to exclude evidence of his divorce and testimony about whether he was a "womanizer" is **GRANTED**.

7.    Defendant W. Jeffrey Taylor's Motion to Preserve *Brady* Materials [Docket No. 257] is **DENIED as moot** without prejudice.

8.    Defendant W. Jeffrey Taylor's Motion to Introduce Exculpatory Evidence [Docket No. 258] is **GRANTED** to the extent consistent with this Opinion, the interviewing agents are **ORDERED** to testify, and the parties are **ORDERED** to meet and confer about such testimony.


DATED: January 11, 2018             _____s/John R. Tunheim_____
at Minneapolis, Minnesota.            JOHN R. TUNHEIM
                                  Chief Judge
                       United States District Court