# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

                                         Criminal No.  16-246 (JRT/FLN)

                    Plaintiff,

v.                                       **MEMORANDUM
                                         OPINION AND ORDER**

JEROME C. RUZICKA, SCOTT A.
NELSON, W. JEFFREY TAYLOR,
LAWRENCE W. MILLER, and
LAWRENCE T. HAGEN,

                    Defendants.

Gregory G. Brooker, Interim United States Attorney, and Benjamin F. Langner, Lola Velazquez-Aguilu, and Surya Saxena, Assistant United States Attorneys, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN  55415, for plaintiff.

John C. Conard, **JOHN C. CONARD PLLC**, 310 Fourth Avenue South, Suite 5010, Minneapolis, MN  55415, for defendant Jerome C. Ruzicka.

Casey T. Rundquist and William J. Mauzy, **MAUZY LAW PA**, 800 Hennepin Avenue, Suite 800, Minneapolis, MN  55403, for defendant W. Jeffrey Taylor.

Paul C. Engh, 200 South Sixth Street, Suite 420, Minneapolis, MN  55402, for defendant Lawrence W. Miller.

Kevin J. Short, 150 South Fifth Street, Suite 3260, Minneapolis, MN 55402, for defendant Lawrence T. Hagen.

Defendants Jerome Ruzicka, W. Jeffrey Taylor, Lawrence Miller, and Lawrence

Hagen have been charged in connection with the alleged embezzlement of funds from

Starkey Laboratories.  Defendants have moved to exclude testimony from Scott A.

Nelson on the grounds that the Government failed to timely disclose exculpatory statements made by Nelson during his interview on January 10-11, 2018. Because the Court concludes that the Government's week-long delay does not violate the rule of *Brady v. Maryland*, 373 U.S. 83, 87 (1962), the Court will deny Defendants' motion.

## BACKGROUND

The Indictment alleges that, in 2006, Ruzicka, Nelson, and Jeffrey Longtain created Northland Hearing Centers, Inc., ("Northland Hearing") and caused the company to issue 100,000 shares of restricted stock – including 51,000 shares to themselves. (3d Superseding Indictment ¶¶ 36-37, Jan. 8, 2018, Docket No. 298.) They allegedly did so without the knowledge of William Austin, Starkey's majority shareholder. (*Id.* ¶ 37.) In 2013, Ruzicka, Nelson, and Longtain allegedly caused Northland Hearing to pay $15,000,000 in exchange for the termination of their unvested restricted stock – again without Austin's knowledge. (*Id.* ¶¶ 38-43.)

On December 19, 2017, Nelson reached a plea agreement with the Government and changed his plea to guilty. (Plea Agreement, Dec. 19, 2017, Docket No. 266; Minute Entry, Dec. 19, 2017, Docket No. 264). As part of the agreement, Nelson agreed to cooperate with law enforcement in the investigation and prosecution of the other Defendants. (Plea Agreement at 11-12; Hr'g Tr. at 25:16-20, Jan. 3, 2018, Docket No. 287.) On January 10-11, 2018, Nelson was interviewed by a postal inspector, FBI special agent, and two Assistant U.S. Attorneys. After that interview, the postal inspector

prepared a Memorandum of Interview summarizing in detail new information provided by Nelson.  In it, she wrote that:

> Nelson stated that after the newspaper published an article referencing the Northland transaction, he spoke to either Phil Ahern or Damon Anderson of Ernst and Young.  That person advised Nelson that they recalled that Ahern and/or Anderson[ ]discussed the creation of Northland Hearing Centers, Inc. and the restricted stock arrangement with Austin followed their audit.

(Court Ex. 1 at 1, Jan. 19, 2018.)  Nelson had not previously disclosed this information.

Trial of the Defendants began with jury selection on January 16, and the parties gave opening statements the next day.  Counsel for the Government argued that the restricted stock grant was done "without Bill Austin's knowledge," while Ruzicka's counsel argued that Austin "absolutely knew" that Ruzicka had received 51,000 shares of restricted stock in Northland Hearing.  The Government finally disclosed Nelson's exculpatory statements on the evening of January 18, a week after his interview concluded and three days into trial.  Defendants now move to exclude Nelson's testimony, arguing that the Government committed a *Brady* violation by failing to disclose it before trial.

## DISCUSSION

The Court must decide whether the Government has committed a *Brady* violation by failing to disclose the exculpatory evidence elicited from Scott Nelson during the January 10-11 interview.  The crux of Defendants' argument is that the Government's failure to disclose this evidence until the third day of trial impeded their trial strategy,

including their ability to argue based on the evidence in their opening statements.  The Court will conclude that there is no *Brady* violation and therefore will deny the Defendants' motion.

In *Brady*, the Supreme Court held that the prosecution's failure to disclose evidence that is both favorable to the accused and material to the accused's guilt or punishment violates due process.  373 U.S. at 87; *see also United States v. Kime*, 99 F.3d 870, 882 (8th Cir. 1996).  *Brady* applies equally to evidence impeaching the credibility of prosecution witnesses as to exculpatory evidence.  *Giglio v. United States*, 405 U.S. 150, 154 (1972).  But "[t]he rule of *Brady* is limited to the discovery, after trial, of information which had been known to the prosecution but unknown to the defense."  *Kime*, 99 F.3d at 882 (quoting *Nassar v. Sissel*, 792 F.2d 119, 121 (8th Cir. 1986)).

In *Kime*, the defendant argued that the Government failed to comply with *Brady* when it failed to timely disclose a romantic relationship between several prosecution witnesses and their jailers:

> Before trial, the Government informed the district court that it had become aware of a romantic entanglement between prosecution witnesses Brown, Dolash, and Groves and some of their female jailers.  As a result, Brown, Dolash, and Groves apparently received several special privileges while in the Dallas County Jail, including sexual contact with female jailers, expanded visiting privileges with family members, catered food, and access to otherwise off-limits areas of the jail, computer records, areas outside the jail, and the control center.  These irregularities, however, were not brought to the attention of the defense until midway through the cross-examination of Dolash, after Brown and Groves had already testified.

*Id.* at 881-82.  The Eighth Circuit held that there was no *Brady* violation because (1) "the disclosure was made during defense counsel's cross-examination of Dolash, enabling him to cross examine Dolash extensively on the subject," (2) "the defense called one of the offending female corrections officers to the stand where she testified extensively on the issue, placing the facts squarely before the jury," and (3) "[t]he defense was [] free to recall Brown and Groves in order to cross examine them on the subject as well."  *Id.* at 882.  The Eighth Circuit concluded that "*Brady* does not require pretrial disclosure as long as ultimate disclosure is made before it is too late for the defendant to make use of any benefits of the evidence."  *Id.*

In *United States v. Cruz-Feliciano*, the First Circuit rejected arguments analogous to Defendants' here.  786 F.3d 78, 85-88 (1st Cir. 2015).  There, the defendant argued that the Government had failed to timely disclose that a Report of Investigation, which summarized an interview with a prosecution witness, contained errors.  *Id.* at 85-86.  In his opening statement, defense counsel attacked the witness's credibility based on statements in the report that were erroneously attributed to him.  *Id.* at 86.  The Government subsequently disclosed the errors; nonetheless, the defendant argued that this "late disclosure undermined the defense strategy that he had presented to the jury during opening statements."[1]  *Id.*  The First Circuit concluded that "late disclosure of this evidence did not prevent defense counsel from effectively using it at trial" because (1) the

---

[1] By contrast, Defendants here argued in their opening arguments that Austin was aware of the issuance of restricted stock in Northland Hearing.  Because the untimely disclosed information **supports** Defendants' opening arguments, the Court fails to see how earlier disclosure would have changed the Defendants' opening statements in any material respect.

Government disclosed the error on the first day of trial, (2) the defense had seven days to use this evidence in preparing and presenting its case, and (3) the evidence disclosed was was "short, uncomplicated, and fairly predictable" impeachment evidence. *Id.* at 88 (quoting *United States v. Peters*, 732 F.3d 1004, 1009 (1st Cir. 1984)).

The Court concludes that sufficient time remains for Defendants to make use of this evidence at trial. *Kime*, 99 F.3d at 882. This trial is estimated to last 31 trial days, and the information at issue was disclosed on the third. The evidence presented to date has not related to Northland Hearing in any material respect. After today, Defendants have an estimated 27 trial days – not including weekends and several breaks – to further investigate what Austin knew about Northland Hearing and to use that information at trial. *Cruz-Feliciano*, 786 F.3d at 88 (concluding that seven days was sufficient). Accordingly, the Court will deny Defendants' motion.

That said, the Government should have made this disclosure before the start of trial. Defendants have expressed concern that they will not be able to locate Phil Ahern and Damon Anderson of Ernst and Young to interview them about Austin's knowledge of Northland Hearing or the issuance of restricted stock. Nelson was interviewed on January 10 and 11, nearly a week before the start of trial. (Court Ex. 1 at 1.) Two of the Government's attorneys attended Nelson's interview and knew that the evidence was subject to *Brady* disclosure. (*Id.*) The Court will not reward the Government for waiting more than a week to disclose it. In order to mitigate any disadvantage Defendants may suffer from the failure to timely disclose the evidence, the Court will order the Government to disclose to Defendants any information they have related to (1) Phil

Ahern, (2) Damon Anderson, and (3) Ernst and Young's audits of Starkey. *See* Fed. R. Crim. P. 16(a). The Court finds that this disclosure will remedy any harm caused by the delay by expediting Defendants' investigation of the newly disclosed evidence.

Moreover, the Court notes that this evidence is most relevant for Defendants' cross-examination of Austin and Nelson and for Defendants' case-in-chief. As such, the Court finds appropriate the Government's agreement not to call Austin or Nelson as witnesses before trial resumes from break on February 6.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Exclude Testimony by Defendant Scott A. Nelson is **DENIED**. The Court **ORDERS** the Government to disclose to Defendants any information they have related to (1) Phil Ahern, (2) Damon Anderson, and (3) Ernst and Young's audits of Starkey.

DATED: January 19, 2018
at Minneapolis, Minnesota.

_John R. Tunheim_

JOHN R. TUNHEIM
Chief Judge
United States District Court