IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

**The United States of America,**

    **Plaintiff,**

v.                                                        Case No. CR 16-246 JRT/FLN

**Jerome Ruzicka,**

    **Defendant.**

---

### DEFENDANT JEROME RUZICKA'S MOTION
### FOR A NEW TRIAL BECAUSE THE GOVERNMENT
### CONSTRUCTIVELY AMENDED THE INDICTMENT

---

Defendant Jerome Ruzicka hereby moves this Court to grant a new trial because the prosecutor constructively amended the indictment. With regard to the Northland charges, the Third Superseding indictment alleged a scheme to defraud based on omission. Instead of pursuing this charged scheme at trial, the prosecutor immediately sought to constructively amend the indictment to include fraud by "abuse of authority and autonomy," and alternatively fraud by affirmative concealment, and also alternatively fraud by affirmative false representation. Such an amendment is error *per se*, and although prejudice is

1

presumed, the Jury's second and fourth questions demonstrate the likelihood that a conviction was based on an uncharged scheme, or lacks unanimity of verdict, and likely both.

## APPLICABLE LAW

Rule 33 of the Federal Rules of Criminal Procedure allows this Court to vacate the guilty verdicts and grant a new trial if the interest of justice so requires. Fed. R. Crim. P. 33(a).

Constructive amendment implicates two fundamental interests held by the accused: the Fifth Amendment right to indictment by a grand jury, and the Sixth Amendment right to notice of the charges against him. *United States v. McDill*, 871 F.3d 628, 632 (8th Cir. 2017) (citing *United States v. Stuckey,* 220 F.3d 976, 981 n.5 (8th Cir. 2000)).

"It is well established that a defendant cannot be tried on charges that are not made in the indictment." *United States v. Yeo*, 739 F.2d 385, 387 (8th Cir. 1984). A constructive amendment to an indictment "occurs when either the government (usually during its presentation of evidence and/or its argument), the court (usually through its instructions to the jury), or both, broadens the possible bases for conviction beyond those presented by the grand jury." *United States v. Floresca*, 38 F.3d 706, 710-11 (4th Cir. 1994); *see also United States v. Starr*, 533 F.3d 985, 997 (8th Cir. 2008) ("A constructive amendment occurs when the essential

elements of the offense as charged in the indictment are altered in such a manner — often through the evidence presented at trial or the jury instructions — that the jury is allowed to convict the defendant of an offense different from or in addition to the offenses charged in the indictment.").

## ARGUMENT

Here, although the government presented the grand jury with a narrowed Northland scheme in the Third Superseding Indictment, the government amended it at trial to include a broader and duplicitous collection of bases for conviction. This constructive amendment denied Mr. Ruzicka his Fifth and Sixth Amendment rights and deprived him of a fair trial.

### I. The Third Superseding Indictment alleges a scheme of fraud by omission for the Northland Counts.

On January 8, 2018, the government filed its Third Superseding Indictment. This indictment described the Northland charges in paragraphs 35-43. The scheme alleged in the indictment included: (1) the creation of Northland Hearing Centers, Inc. ("NHC"), without William Austin's ("Austin") knowledge or approval; (2) the issuance of restricted stock in NHC without Austin's knowledge or approval; and (3) the termination of the stock without Austin's knowledge or approval. Dkt. 298 at ¶¶ 35-43.

Notably, the difference between this and the previous indictment is the complete deletion of what was paragraph 41 in the Second Superseding

Indictment. That paragraph began with "RUZICKA and NELSON took various steps to conceal the Northland transactions from Austin…." Dkt. 215 at ¶ 41. The government followed this statement in the Second Superseding Indictment with a laundry list of affirmative acts of concealment. *Id*.

In contrast, the Third Superseding Indictment removed the word "conceal" in all its forms from the Northland section of the indictment. Dkt. 298 at ¶¶ 35-43. This change was consistent with representations made by government lawyers that the final indictment would "clean up" and "clarify" the indictment. This approach was also consistent with the evidence, which included no affirmative act of concealment in the creation of NHC or the transfer of Starkey's retail assets into NHC.

This amendment helped the government avoid a problem of materiality. Undoubtedly the government could find some action that it could call "concealment," but in the face of full disclosure of both NHC's existence and the issuance of restricted stock in NHC in every external, official, and audited report, finding a material concealment would be all but impossible.

Instead the government put its eggs in the "Austin didn't know" basket. Hence the prosecutors' repeated question at trial:

> So…would you use the consolidated financial statements if you wanted to communicate something to Mr. Austin?

*See, e.g.,* Trial Tr. vol. 17, 10:23-25, Feb. 19, 2018. In a concealment case, this would be improper burden shifting by suggesting that defendants had to prove a lack of concealment. In an omission case, it is arguably proper.

II. **In its trial brief, and later in its closing argument, the government proposed a new theory of prosecution not recognized at law and not charged in the indictment.**

Shortly before trial, the government introduced for the first time the notion that the crime Mr. Ruzicka was actually being tried for was "misusing his authority and autonomy as president of Starkey Laboratories." Dkt. 244 at 1. This nebulous concept finds no basis in the federal wire or mail fraud statutes, *see* 18 U.S.C. §§ 1341 and 1343, and more importantly no basis in the Northland counts contained in the indictment.

No evidence was received to establish what would amount to a criminal abuse of authority by a corporate officer. No evidence was received to establish what would amount to an abuse of autonomy by a corporate officer. No instruction was given by the Court to guide the jury on what law would apply to create criminal liability for whatever actions might constitute an "abuse" of an officer's authority in a corporation. Worse, since the law recognizes that an officer can act within the bounds of their granted authority, this theory suggests the possibility of criminal liability for perfectly legal actions.

The government's amendment of its basis for conviction reappeared during closing arguments, when the prosecutor argued that Mr. Ruzicka was guilty because he abused his authority:

> Through a variety of methods, Jerry Ruzicka and his coconspirators stole more than 20 million dollars from Starkey and Sonion. Now, although these methods vary in terms of the specific details, they share a common purpose, **to take advantage of the defendants' positions of authority, particularly Mr. Ruzicka's unique position of trust and autonomy within Starkey**, to steal from Starkey and to steal from Sonion.

Trial Tr. vol. 35, 5:18-25, Mar. 2, 2018 (emphasis added). Just minutes later, the prosecutor reiterated this "abuse of authority" theory:

> Make no mistake. The common denominator in this, the glue that binds, **is the abuse of Mr. Ruzicka's position of power and prominence to pave the way for this fraud by exploiting Mr. Ruzicka's position**, as well as the authority of each of the defendants and coconspirators.

*Id.* at 7:10-14 (emphasis added). At the time the prosecutor argued this, she knew there was no evidence in the record regarding what constituted "abuse of authority" and that there would be no instruction to guide the jury with regard to fraud by "abuse of power." This constituted a constructive amendment of the indictment.

This is one of the rare cases where the Court need not speculate to determine whether the government's actions had an effect on the jury, because it is clear from the jury's questions that it was affected. On March 8, 2018, during

its third day of deliberations, the jury submitted a question to the Court asking if it could "please explain Occupational fraud." Dkt. 411. "Occupational fraud" is a phrase that was not used by any counsel or any witness during the trial. It is a term of art used by the Association of Certified Fraud Examiners to describe "the use of one's occupation for personal enrichment through the deliberate misuse or misapplication of the organization's resources or assets." Ex. 1.[1] In short, "occupational fraud" is precisely the new theory advocated by the prosecutor during her closing argument.

    While the Court correctly instructed the jury that "occupational fraud" was not a crime, that instruction did not come until more than two days into the jury's deliberations, and five days after the government's rebuttal. And just a day later, the jury informed the Court that "there is a lot of animosity" between jurors, and requesting whether a "hung jury [was] an option?" Dkt. 415. Given these two jury questions, it is clear that the government's attempt to expand the indictment to include fraud by "abuse of power/authority" affected the jury and may well have led to non-unanimity of verdict. The government's constructive amendment therefore necessitates a new trial.

---

[1]    A true and correct copy of a screenshot of the "Fraud 101" page from the ACFE's website, found at http://www.acfe.com/fraud-101.aspx, is attached to this motion as Exhibit 1. This page is the top result on Google when the phrase "occupational fraud" is searched.

### III. The government broadened the charges in rebuttal to escape the force of legitimate jury instructions.

The government's closing argument went beyond merely advocating an alternative theory for conviction. The government specifically disclaimed its prior theory of prosecution in an effort to render moot jury instructions that would have resulted in acquittal. Specifically, the Court issued a jury instruction under *United States v. Steffen*, 687 F.3d 1104 (8th Cir. 2012) to make sure that the jury understood that fraud by omission required proof of a statutory or fiduciary duty by the one who remained silent. In this case, the Government retained an expert to provide precisely that evidence for the jury. However, the government made a strategic choice not to call that expert. It chose to introduce no evidence whatsoever that established a statutory or fiduciary duty on the part of Mr. Ruzicka to inform Austin of the creation of NHC, the transfer of retail assets into NHC, the issuance of restricted stock, or of the redemption of that stock.[2] There simply was no evidence in the record to support the existence of a fiduciary or statutory duty to inform Austin. Consequently, under the Court's *Steffen*

---

[2]   In fact, one reasonable inference from the fact that dozens of accountants, auditors, lawyers, several accounting and consulting firms, and hundreds of public officials were aware of all those transactions, while Austin claimed he never wanted to read the documents containing the information, is that no such duty existed.

instruction, the jury would have had no choice but to find Mr. Ruzicka not guilty under a fraud by omission theory.

That fact played prominently in the closing arguments from Mr. Ruzicka and the other defendants. And in response, improperly in rebuttal, the prosecutor argued that the Court's *Steffen* instruction was inapplicable because the government was not pursuing a theory of fraud by omission:

> The defense attorneys have talked about the duty to disclose as a total defense, and it is not. As you will be instructed, there are three ways to commit fraud. First, if you lie, if you affirmatively misrepresent material facts . . . The second way is if you conceal . . . Now, the third way to commit fraud is by standing by silently and failing to disclose facts, but only if there was a duty to reveal those facts. So this is the duty to disclose issue that the defense attorneys have been referencing. It is the third way to commit a fraud.
>
> **We are not alleging a fraud by omission in this case, and so you do not need to determine if any of the defendants had a duty to disclose**.

Trial Tr. vol. 35, 55:13-56:12, Mar. 2, 2018 (emphasis added). The prosecutor effectively told the jury that the scheme for the Northland counts described and charged in the indictment was not what they were tasked with deciding. She told them to disregard the Court's *Steffen* instruction. She told them to consider multiple other uncharged schemes with regard to the Northland counts. She acted as her own grand jury to avoid a hole in the evidence for the indicted conduct, and to create two alternate, uncharged paths to conviction. Even if these

actions do not rise to the level of a constructive amendment they are certainly a prejudicial variance. Mr. Ruzicka is therefore entitled to a new trial.

## Conclusion

The Third Superseding Indictment charged Mr. Ruzicka with fraud by omission. From the beginning of the case, conviction on the Northland charges required proof that William Austin did not know about the restricted stock, that Mr. Ruzicka lacked the authority to act on his own, and that Mr. Ruzicka knew it. Trial Tr. vol. 5, 37:6-14, Jan. 23, 2018. These charges further required that the government prove that Mr. Ruzicka had a duty to disclose this information to Austin. The government made a calculated decision to avoid a failure of proof and to thwart the Court's jury instructions by constructively amending the charges during its closing argument and rebuttal. The only appropriate remedy for these actions is a new trial.

Respectfully submitted this 12th day of April, 2018.

    */s/ John C. Conard*
John C. Conard (MN No. 386618)
Alexander C. Kopplin (MN No. 393197)
Daniel R. Burgess (MN No. 389976)
WARD | KOPPLIN PLLC
227 Colfax Avenue North
Suite 200
Minneapolis, MN 55405
(952) 653-2620
john@jurytrialmn.com

akopplin@wklawfirm.com
burgess@dburgesslaw.com