IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

**The United States of America,**

    **Plaintiff,**

v.                                           Case No. CR 16-246 JRT/FLN

**Jerome Ruzicka,**

    **Defendant.**

---

### DEFENDANT JEROME RUZICKA'S RENEWED MOTION
### FOR JUDGMENT OF ACQUITTAL

---

Defendant Jerome Ruzicka hereby renews his previous motion for judgment of acquittal as detailed below.

### APPLICABLE LAW

Federal Rule of Criminal Procedure 29 requires that the Court, upon a defendant's motion, "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." The Court may grant such a motion after a jury verdict of guilty. Fed. R. Crim. P. 29(c).

A motion for judgment of acquittal must be granted where "the evidence, viewed in the light most favorable to the government, is such that a reasonably

1

minded jury must have a reasonable doubt" as to the existence of the elements of the offense. *United States v. Pardue*, 983 F.2d 843, 847 (8th Cir. 1993) (quoting *United States v. Mundt*, 846 F.2d 1157, 1158 (8th Cir. 1988)). To withstand a motion for judgment of acquittal, the government "must have introduced evidence in its direct case 'upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt' on each and every element of the offense." *United States v. Occhipinti*, 772 F. Supp. 170, 171-72 (S.D.N.Y. 1991) (quoting *United States v. Mariani*, 725 F.2d 862, 865 (2d Cir. 1984)).

## ARGUMENT

### I.   Counts 2, 3, and 4 are unproven because the fraudulent scheme, if any, was complete before the mailing occurred.

Mr. Ruzicka is first entitled to judgment of acquittal on Counts 2 through 4 because the government failed to prove mail fraud under 18 U.S.C. § 1341. Section 1341 includes a mailing element, which requires "that the defendant 'caused' the use of the mails" "for the purpose of executing the scheme." *United States v. Freitag*, 768 F.2d 240, 242-43 (8th Cir. 1985). As the Eighth Circuit explained in *Freitag*:

> In order to meet the second requirement, that the "use" was for the purpose of "executing the scheme," the government did not need to establish that the mailings were an essential element in the scheme; the government needed to prove only that they were "sufficiently closely related" to the scheme to bring the defendant's conduct within the ambit of the statute.

*Id.*; *see also United States v. Taylor*, 789 F.2d 618, 620 (8th Cir. 1986).

This does not mean, however, that any use of the mails by someone who has also committed fraud constitutes mail fraud. "The federal mail fraud statute does not purport to reach all frauds, but only those limited instances **in which the use of the mails is a part of the execution of the fraud**, leaving all other cases to be dealt with by appropriate state law." *Kann v. United States*, 323 U.S. 88, 95 (1944) (emphasis added); *see also Schmuck v. United States*, 489 U.S. 705, 710 (1989); *Freitag*, 768 F.2d at 243; *United States v. Tackett*, 646 F.2d 1240, 1244 (8th Cir. 1981).

Although the scheme does not have to "contemplate the use of the mails as an essential element," *United States v. Maze*, 414 U.S. 395, 400 (1974) (quoting *Pereira v. United States*, 347 U.S. 1, 8 (1954)), the mailing must always be "incident to an essential part of the scheme." *Schmuck*, 489 U.S. at 710-11 (also quoting *Pereira*, 347 U.S. at 8); s*ee also Taylor*, 789 F.2d at 620. "Thus, as a general proposition, use of the mails after a scheme reaches fruition will not constitute grounds for a conviction." *Taylor*, 789 F.2d at 620; s*ee also Maze*, 414 U.S. at 402; *Kann*, 323 U.S. at 94.

Here, the mailings for counts 2 and 3 occurred after Ruzicka or Nelson had already obtained the money from Starkey, and merely transferred the money from one personal investment account held at Edward Jones, to a personal life

3

insurance account held at Lincoln Financial Group. The mailing in count 4 occurred after Starkey had (presumably wrongly) paid Archer Consulting and reflects a transfer from an account wholly controlled by Taylor and Ruzicka into another account. In each case, the transfers occurred after the aim of the allegedly fraudulent scheme—to get money from Starkey—had already been completed.

Nor could any of these mailings fall under the "lulling exception" to mail fraud. Courts have found that under special circumstances, mailings occurring after receipt of the goods obtained by fraud may still fall under the mail fraud statute if they "were designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendants less likely than if no mailings had taken place." *Maze*, 414 U.S. at 403; s*ee also United States v. Sampson*, 371 U.S. 75 (1962); *United States v. Lane*, 474 U.S. 438, 451-52 (1986); *Taylor*, 789 F.2d at 620; *Tackett*, 646 F.2d at 1243. "The relevant question at all times is whether the mailing is part of the execution of the scheme as conceived by the perpetrator at the time." *Schmuck*, 489 U.S. at 715.

The government introduced no evidence supporting a suggestion that the mailings at issue here were done to lull or even could be utilized to lull. In the case of counts 2 and 3, the personal accounts held at Edward Jones were entirely outside the visibility of anyone at Starkey other than Ruzicka and his alleged

accomplice. The accounts at Lincoln Financial were similarly unseen by anyone at Starkey. Once the money was in the first set of accounts, it had been obtained, and the fraudulent scheme was complete. There is no basis in the record nor any legal theory that supports a finding that these mailings were an essential part of any fraudulent scheme. For that reason, Mr. Ruzicka is entitled to judgment of acquittal on Counts 2, 3 and 4.

**II.    Mr. Ruzicka is entitled to judgment of acquittal on Counts 7 and 19 because the government has not proven any concealment or misrepresentation by Mr. Ruzicka, nor a failure to disclose pursuant to a legal duty.**

Mr. Ruzicka is also entitled to judgment of acquittal on the counts involving Archer Acoustics. The government's theory for these counts was that Mr. Ruzicka, Mr. Taylor and Mr. Hagen engaged in a deceptive scheme to defraud Sonion of money that would otherwise be paid to Sonion. Under this theory, Sonion—and only Sonion—was the victim of the scheme to defraud using Claris Investments and Archer Acoustics.

A mail or wire fraud prosecution may be premised on either active concealment or an affirmative misrepresentation. *United States v. Steffen*, 687 F.3d 1104, 1114-15 (8th Cir. 2012). Active concealment includes "acts taken to conceal, create a false impression, mislead, or otherwise deceive in order to 'prevent the other party from acquiring material information.'" *Id.* at 1115 (quoting *United*

*States v. Colton*, 231 F.3d 890, 898 (4th Cir. 2000)). However, mere nondisclosure, in the absence of a duty to disclose, is insufficient to support a conviction for mail or wire fraud. *Id.* at 1115 (quoting *Colton*, 231 F.3d at 898-99); *see also Eller v. EquiTrust Life Ins. Co.*, 778 F.3d 1089, 1092 (9th Cir. 2015) ("A non-disclosure, however, can support a fraud charge only 'when there exists an independent duty that has been breached by the person so charged.'") (quoting *United States v. Dowling*, 739 F.2d 1445, 1449 (9th Cir. 1984), *rev'd on other grounds*, 473 U.S. 207 (1985)).

Despite entering hundreds of exhibits, including billing records, invoices, and e-mails, the government did not introduce any evidence at trial that Mr. Ruzicka made any misrepresentation to anyone at Sonion. Nor did it introduce any evidence that Mr. Ruzicka actively concealed anything from Sonion.

In fact, the opposite was proven to be true. At trial, the government clearly established through witness testimony and documentary evidence that Mr. Ruzicka's involvement in Archer Acoustics was well-known to everyone at Sonion. He was listed as the contact person for Archer Acoustics in Sonion's computer system, along with his home address. Sonion's clients told Sonion that Mr. Ruzicka was involved in Archer Acoustics. Sonion employees took the stand and admitted they knew Mr. Ruzicka was the driving force behind Archer Acoustics.

Due to Sonion's well-documented knowledge of Mr. Ruzicka's involvement, the government's theory instead appeared to be that Mr. Ruzicka was guilty of wire fraud because he did not disclose to Sonion that Jeff Taylor was a member of Archer Acoustics.[1] Essentially, he was found guilty of mail fraud because he remained silent. But even assuming that Mr. Ruzicka knew that Jeff Taylor's involvement was not disclosed to Sonion—which the government never even attempted to prove at trial—the government never proved that Mr. Ruzicka had any duty to disclose this information to Sonion. Silence alone is insufficient to support a conviction of mail fraud absent a legal duty to disclose. *Steffen*, 687 F.3d at 1115. In the absence of any evidence of misstatement or active concealment or of a legal duty owed to Sonion, Mr. Ruzicka's mere silence was not sufficient to find him guilty.

Mr. Ruzicka anticipates that the government will argue that Mr. Ruzicka could nevertheless have been found guilty because he "aided and abetted" Mr. Taylor's fraud. But the government admitted no evidence that Mr. Ruzicka knew

---

[1] In its response to Mr. Taylor's trial motion for judgment of acquittal, the government argued that Mr. Ruzicka's role in the alleged scheme to defraud was also to "frame [Archer Acoustic and Claris Investments] as Starkey affiliates to Sonion and small customers." Dkt. 367 at 7. But no evidence was ever admitted that Mr. Ruzicka made any such representation to anyone at Sonion—only that Mr. Taylor did. And even if Mr. Ruzicka had made such a representation, it would not have constituted a misrepresentation. A company partially owned by Starkey's president is clearly affiliated with Starkey.

7

of duty to disclose on the part of Taylor, or knew that Taylor had not disclosed his ownership. It also admitted no evidence that suggested Mr. Ruzicka knew such a disclosure by Taylor was material. Without a showing that Mr. Ruzicka had sufficient knowledge to aid and abet, the government is essentially counting on Ruzicka's mere presence and involvement with the business venture, combined with Taylor's deception of Taylor's employer, to argue that Ruzicka is guilty. That is not enough.

Because the government's evidence against Mr. Ruzicka relating to Archer Acoustics is limited to mere silence, or alternatively mere presence, Mr. Ruzicka is entitled to judgment of acquittal on Counts 7, and 19.

### III. Mr. Ruzicka is entitled to judgment of acquittal on Counts 7, and 19 because there is no evidence he intended to deceive or defraud Sonion.

Mr. Ruzicka is also entitled to judgment of acquittal on the Archer Acoustics counts because the government admitted no evidence that he intended to defraud Sonion. As stated above, the government's theory of fraud relating to Sonion appears to be that Jeff Taylor's involvement with Archer Acoustics was not disclosed to Sonion. Thus, they must prove that Mr. Ruzicka intended to defraud Sonion via this scheme.

But the government has introduced no evidence whatsoever that Mr. Ruzicka knew about the nondisclosure or acted to perpetuate it. The government entered hundreds of e-mails at trial involving Mr. Taylor or Mr. Ruzicka. Not a

single one of these e-mails indicated that Mr. Ruzicka knew whether or not Mr. Taylor had disclosed his interest in Archer Acoustics to Sonion.[2] Neither did any other document in the case. And every Sonion witness testified that though Mr. Ruzicka was prominently listed as the contact for Archer Acoustics, no Sonion employee ever contacted him.

In short, the government provided no basis at trial for its allegation that Mr. Ruzicka intended to defraud Sonion or engaged in a scheme to do so. He is therefore entitled to judgment of acquittal on Counts 7, and 19.

**V.     Mr. Ruzicka is entitled to judgment of acquittal on Count 25, because the evidence at trial established that the $200,000 he received from Starkey was a loan.**

Count 25 alleged that Mr. Ruzicka willfully made and subscribed a false income tax return that understated his income. The government's contention is that Mr. Ruzicka received $200,000 in income from Starkey on April 8, 2014. The only evidence introduced by the government to support the allegation that this money was income was an internal Starkey check requisition describing the money as being for "officer's insurance." This document was not signed by Mr.

---

[2] The only communication that arguably comes close is an e-mail from Mr. Taylor to Mr. Ruzicka asking him to use a different UPS Store than the one near Sonion headquarters. Even taken in the light most favorable to the government, that e-mail did not prove beyond a reasonable doubt that Mr. Ruzicka knew whether or not Mr. Taylor's involvement was disclosed to Sonion.

Ruzicka, and the government offered no evidence that he ever saw the document or even knew of its existence.

However, as every government witness who was asked agreed, a loan is not income unless and until the lender forgives it. And the unrebutted evidence at trial was that the $200,000 was, in fact, a loan to Mr. Ruzicka. Scott Nelson, the Starkey employee who provided Mr. Ruzicka with the money, confirmed this in his testimony:

> Q. The $200,000 to Jerry Ruzicka was in fact a loan, right?
> A. I understand it to be that, yes.
> Q. Okay. And that's what you told him, and that's what you both understood?
> A. Correct.
> Q. And that's why it didn't end up in his W-2?
> A. Correct.
> Q. And as far as you know, it is still due and owing?
> A. Yes.

Trial Tr. vol. 18, 214:18 – 215:2, Feb. 20, 2018. This testimony came from a government witness. After it was offered, the government made no attempt to rebut it. And the government introduced no evidence that Starkey ever forgave this loan. The clear and unambiguous testimony of the government's own witness firmly establishes that the $200,000 paid to Mr. Ruzicka was not income.[3]

---

[3] The government also argued that the $200,000 was not a loan because Starkey did not internally book it as such. But several of the government's own witnesses testified that off-the-books loans were commonplace at Starkey. Given this fact, the absence of an entry in a loan register cannot override the clear and

Therefore Mr. Ruzicka must be acquitted of the charge that he failed to pay income taxes on that $200,000.

Finally, the government entered no evidence that support a finding of willfulness. Willfulness requires an intentional violation of a known legal obligation. Here, the undisputed evidence is that Ruzicka was told that the money was a loan and understood it to be a loan. There is no evidence that Nelson, or anyone else, told Ruzicka that the money was booked differently or that the payment was absent from the loan register. Even if the jury disregarded Nelson's testimony entirely, the government would still have to prove that Mr. Ruzicka knew both that the money was booked in a manner that made it income, and also that it was improperly excluded from his W-2. The government offered no evidence whatsoever on either point.

If the jury credited Scott Nelson's unrebutted testimony, the government's case fails. If the jury disregards Nelson's testimony, there is no evidence to suggest Ruzicka had the requisite knowledge to commit a willful tax violation. Mr. Ruzicka is therefore entitled to judgment of acquittal on Count 25.

---

unambiguous testimony from Mr. Nelson—the individual who set up the transaction—that this money was, in fact, a loan.

**VI. Mr. Ruzicka is entitled to judgment of acquittal on all Northland counts.**

For the Northland counts, the government alleged a scheme to defraud based on fraud by omission in its Third Superseding Indictment. For reasons described earlier, omission can only give rise to fraud if there is a duty to disclose, established by the evidence. No evidence established such a duty with regard to Northland.

At trial, the government constructively amended the indictment to include a charge of fraud by active concealment.[4] Even if the Court allowed this constructive amendment, the government would still be required to prove that Mr. Ruzicka concealed the transfer of stores to NHC, concealed the issuance of the restricted stock, and concealed the redemption of the stock and payment. The government failed to prove any of these points. Examining the evidence in the light most favorable to the government, Austin remained actually ignorant of all the activities above. However, there is no evidence of active material concealment in the creation of NHC, the issuance of restricted stock, or the redemption and payment.

---

[4] Mr. Ruzicka has filed a motion for a new trial based on the government's constructive amendment of the indictment contemporaneously with this motion.

In fact, the evidence is that outside lawyers, inside lawyers, the entire accounting and tax departments, and Starkey's outside auditors were all aware—and reported year after year—the existence of NHC and the restricted stock. Similarly, all official reports and Starkey's tax returns disclosed the redemption and payout. At trial, the government argued that removing the payment from Northland's descending gross report was evidence of concealment. But the undisputed testimony from William Austin himself was that in his entire time as CEO of Starkey, he never once asked for or received the Northland descending gross report, and in fact did not even know it existed until years after the payout. A person does not conceal a fact from someone else by removing it from a document he knows they will never see. In the face of full disclosure in Starkey's tax filings, its audited financials, its ESOP valuation reports, and within the leadership team (which included Brandon Sawalich, Austin's step-son), The government did not prove a material concealment beyond a reasonable doubt.

In summary, even with the benefit of presumptive inferences, all that the evidence supports is that Austin lacked actual knowledge of the Northland Transactions. This is of course a necessary condition, but not by itself a sufficient condition to support conviction. The indictment requires proof of a duty to disclose to Austin. If the government is allowed to constructively amend they must establish an active material concealment in the issuance of stock and the

redemption and payment. The record is bereft of sufficient evidence in either case. Mr. Ruzicka is therefore entitled to judgment of acquittal on all counts relating to Northland.

## CONCLUSION

For the foregoing reasons, Mr. Ruzicka respectfully requests that this Court enter judgment of acquittal on all counts of which he was convicted.

Respectfully submitted this 12th day of April, 2018.

>  */s/ John C. Conard*
> John C. Conard (MN No. 386618)
> Alexander C. Kopplin (MN No. 393197)
> Daniel R. Burgess (MN No. 389976)
> WARD | KOPPLIN PLLC
> 227 Colfax Avenue North
> Suite 200
> Minneapolis, MN 55405
> (952) 653-2620
> john@jurytrialmn.com
> akopplin@wklawfirm.com
> burgess@dburgesslaw.com