UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
16-cr-246 (JRT/SER)

RECEIVED
MAY 03 2018
CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | WILLIAM AUSTIN'S |
| JEROME C. RUZICKA, et al., ) | BRIEF REGARDING HIS STATUS |
| ) | AS A CRIME VICTIM |
| Defendants. ) | |

## INTRODUCTION

By letter dated April 5, 2018 (Doc. No. 431), William Austin sought permission, under the Crime Victim's Rights Act (CVRA), to file a motion to clarify and amend the Court's February 27, 2018 Order (Doc. No. 377, the "February 27 Order") consistent with the Court's subsequent rulings from the bench.[1] The Court deferred ruling on Mr. Austin's request, and instead issued an order directing him to submit briefing as to why he is a "crime victim" as that term is defined by the CVRA. (Doc. No. 432.) Mr. Austin submits this brief in response to the Court's order. As set forth below, Starkey Laboratories, Inc. ("Starkey"), as a victim in and of itself, joins and supports Mr. Austin's position with regard to his status as a victim. Starkey also intends to join Mr. Austin's motion, or file its own motion, seeking clarification and amendment of the Court's February 27 Order.

---

[1] Mr. Austin will also seek clarification of the February 27 Order pursuant to the Court's inherent authority to review its own orders.

SCANNED
MAY 04 2018
U.S. DISTRICT COURT ST. PAUL

## BACKGROUND

Following a lengthy trial in this Court, a jury convicted Defendants Jerome Ruzicka ("Ruzicka") and W. Jeffrey Taylor ("Taylor") of mail and wire fraud charges related to a massive fraud scheme. (Verdict Forms, Doc. Nos. 417 and 418, Counts 2, 3, 4, 5, 7, 10 & 19.) Previously, Defendant Scott Nelson ("Nelson") pleaded guilty to conspiracy related to the fraud scheme. (Doc. No. 266, the "Nelson Plea Agreement".) In a related, but separately-filed matter, Jeff Longtain ("Longtain") also previously pleaded guilty to a tax charge and admitted to many of the facts underlying the Northland stock fraud scheme for which Ruzicka was convicted. (*United States v. Longtain*, Case No. 17-cr-00046-JRT, Doc. No. 15, the "Longtain Plea Agreement".)

The counts of conviction, the trial testimony and the factual bases of the Nelson and Longtain guilty pleas establish the following facts. First, Mr. Austin was, and is, the undisputed, 100% owner of a pass-through (or "flow-through") entity, Northland US, LLC ("Northland LLC"). (Gov't Trial Exhibit 628, "Grimes Memo", Ex. A; Trial testimony of Scott Nelson, Tr. Vol. XVII, "Nelson Tr. II" at 7:19-22, Ex. B; Longtain Plea Agreement at 4; Nelson Plea Agreement at 2.) With pass-through entities, all corporate income flows through to the shareholders (in this case, Mr. Austin), and they pay the taxes on their personal income tax returns. (Trial testimony of Karen Hines, "Hines Tr." at 10:7-16, Ex. C.) As part of the Northland scheme set forth in Counts 2 and 3, Ruzicka and Nelson caused the transfer of assets, including retail hearing aid operations, from Mr. Austin's company, Northland LLC, to a new entity, Northland Hearing Centers, Inc. ("Northland Inc."). This was accomplished in part by Nelson

signing Mr. Austin's name on the transfer documents without Mr. Austin's authorization. (*See* Trial testimony of Scott Nelson, Tr. Vol. XVI, "Nelson Tr. I" at 228:5 – 230:21, Ex. D; Nelson Tr. II at 6:8 – 9:17; Nelson Plea Agreement at 2; Grimes Memo.) Ruzicka and Nelson, without Mr. Austin's permission or knowledge, instructed attorneys to structure Northland Inc. such that a majority ownership interest in the company would be transferred to themselves and Longtain through restricted stock. (Nelson Tr. I at 222:1-3, "He [Ruzicka] proposed an ownership structure that myself and Jeff Longtain and himself would own a substantial portion of that company in the form of restricted stock."; Trial testimony of Jeff Longtain, "Longtain Tr.", Ex. E at 29:2-4, explaining that, notwithstanding the stock restrictions, he understood that he owned a portion of Northland, Inc.; Longtain Tr. at 28:14-16, explaining that the documents gave them a majority interest; Longtain Tr. at 29:5-8 and 30:15-17, explaining how he learned Mr. Austin did not know about the transfer of restricted stock; Longtain Plea Agreement at 4; Nelson Plea Agreement at 2.)

Second, Ruzicka and Nelson then caused payments totaling $15 million to be made from Starkey to themselves and Longtain, ostensibly in exchange for their rights to the restricted stock. (Nelson Plea Agreement at 3; Longtain Plea Agreement at 4-5.) Both Nelson and Longtain admitted that Mr. Austin did not know of, and did not authorize, the $15 million in payments to them for their restricted stock. (*See, e.g.*, Nelson Plea Agreement at 3; Longtain Plea Agreement at 5; *see* Nelson Tr. II at 66:15-24, 67:11 – 68:24.) Ruzicka and Nelson later concealed these payments from Mr. Austin specifically. For instance, Mr. Austin regularly requested and relied upon descending

3

gross payroll reports that summarized the salaries and compensation paid to Starkey employees. (Nelson Tr. I at 203:25 – 204:14.) Mr. Austin was the only person who looked at those reports. (Trial testimony of Scott Nelson, Tr. Vol. XVIII, "Nelson Tr. III" at 145:24 – 146:8, Ex. F.) On at least one occasion following the Northland restricted stock payments, Ruzicka and Nelson falsified a descending gross payroll report Mr. Austin received such that those payments did not appear. (*See* Nelson Plea Agreement at 4; Nelson Tr. II at 116:8 – 119:18.)

The evidence also plainly established that Starkey was an S-corporation, which is a pass-through entity. (Hines Tr. at 9:24 – 10:25, 12:25 – 13:11 and 16:3 – 17:10, explaining that at both the Minnesota state and the federal levels, the income Starkey earns flows through to Mr. Austin, and he pays taxes on that income on his personal tax returns.) Mr. Austin owned between approximately 93 to 99% of Starkey during this timeframe, 2006 to 2013. (Ruzicka Trial Exhibit 6.04 at 2, showing that Mr. Austin owned approximately 99% of Starkey's stock following the 2005 ESOP, Ex. G; Ruzicka Trial Exhibit 354 at 4, showing Mr. Austin owned approximately 93% of Starkey's stock at the end of 2013, Ex. H); *see also* Nelson Plea Agreement at 2, stating that Starkey is principally owned by Mr. Austin; Longtain Plea Agreement at 2, same.) Nelson understood that the profits of Starkey were Mr. Austin's profits (Nelson Tr. III at 142:7-10,), and therefore, he knew that any losses to Starkey would also accrue to Mr. Austin.[2]

---

[2] The Court previously acknowledged that Mr. Austin and Starkey were virtually indistinguishable. (Motion, Tr. Vol. IX at 6:16-22, "As to the government's claim that this was simply litigation between Starkey and the former wife, Ms. Dawson Austin I guess she is referred to as, I don't really buy that simply because I think for all practical

In addition, Ruzicka and Nelson caused Starkey to employ an improper tax treatment for the payments in a further effort to conceal them. (*See* Hines Tr. at 39:15-20; Nelson Tr. II at 86:3 – 89:24.) This improper tax treatment had a direct and negative impact on Mr. Austin's tax return and tax liability, causing him to pay more in taxes than he should have, even if the underlying transactions were legitimate. (*See* Hines Tr. at 10:9-16 and 23:2-11.)

These are just a few examples of how Mr. Austin and Starkey were directly injured by the crimes for which Defendants were convicted. There were additional counts of conviction on other frauds that affected Starkey and Mr. Austin similarly.

## LEGAL ARGUMENT

The CVRA affords "crime victims" certain rights, including the right to be treated with fairness and respect. *See* 18 U.S.C. § 3771(a)(8). A "crime victim" may assert his rights through a motion for relief "in the district court in which a defendant is being prosecuted for the crime or, if no prosecution is underway, in the district court in the district in which the crime occurred." 18 U.S.C. § 3771(d)(3). The CVRA defines "crime victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense . . . ." 18 U.S.C. § 3771(e)(2)(A).

"To determine a crime victim, then, first, we identify the behavior constituting 'commission of a Federal offense.' Second, we identify the direct and proximate effects of that behavior on parties other than the United States." *In re Stewart*, 552 F.3d 1285,

---

purposes, the Starkey Corporation was Mr. Austin at the time, and so any distinction based on the nature of the litigation who it was between, doesn't seem to me to wash." Ex. I.)

1288 (11th Cir. 2008) (per curiam) (footnote omitted). "A person is directly harmed by the commission of a federal offense where that offense is a but-for cause of the harm. A person is proximately harmed when the harm is a reasonably foreseeable consequence of the criminal conduct." *In re Fisher*, 640 F.3d 645, 648 (5th Cir. 2011) (footnotes omitted). An individual may qualify as a crime victim under the CVRA, ***even if he was not the "target" of the crime***, so long as he suffers harm. *See id.*; *In re McNulty*, 597 F.3d 344, 351 (6th Cir. 2010).

Here, the harm Mr. Austin sustained from the Defendants' fraudulent conduct was both direct and proximate. By transferring significant retail assets from Northland LLC (a pass-through company owned entirely by Mr. Austin) to Northland, Inc., and then arranging to transfer a majority interest in Northland, Inc. to themselves through restricted stock, Ruzicka, Nelson and Longain deprived Mr. Austin of over half of the value of Northland LLC. Ruzicka and Nelson then caused $15 million in unauthorized payments to themselves and Longtain for their interests in the restricted stock. They did this with the knowledge and understanding that the $15 million they had received for their interests was effectively taken from Mr. Austin, as the principal owner of Starkey— a pass-through corporation. In addition, Ms. Hines testified that the improper tax treatment Ruzicka and Nelson caused Starkey to use for these payments ultimately resulted in harm to Mr. Austin personally. (*See* Hines Tr. at 23:2 – 25:3, describing the impact of Starkey's taxes on Mr. Austin's taxes and Nelson's knowledge about this relationship; and 39:15 – 41:24, describing the "not advantageous" tax treatment of the

restricted stock payments and Nelson's negative reaction to Hines' attempts to change that treatment.)

Plainly, Defendants understood that their conduct was financially harmful to Mr. Austin. According to Nelson, Ruzicka made that clear when he told Nelson that if they were found out, he "would repay Austin"—not Starkey or Northland—for the losses. (Nelson Plea Agreement at 3.) In other words, not only was the harm to Mr. Austin proximate and foreseeable—*it was actually foreseen*.

A person may be a crime victim under the CVRA without being a target of the crimes charged, *see In re Fisher*, 640 F.3d at 648; *In re McNulty*, 597 F.3d at 351, but in this case, Mr. Austin plainly was targeted. The testimony at trial plainly established that the Defendants were well aware of the impact their conduct would have on Mr. Austin and went out of their way to deceive him. The fact that Mr. Austin was a target of the Defendants' criminal conduct is further evident from the fact that he is mentioned more than 50 times in the Indictment. *See generally* Indictment [Doc. No. 385]. Mr. Austin was not an unintended victim, but rather, he was central to the crimes at issue.

Courts have found individuals to be CVRA crime victims under similar circumstances. In one case, the defendant ("Warwick") worked for a subcontractor ("BCT") and was assigned to work at the National Security Agency through a contractor ("SAIC"). *United States v. Warwick*, No. CRIM. WDQ-11-0167, 2011 WL 4527285, at *1 (D. Md. Sept. 26, 2011). Warwick submitted timesheets to BCT, which in turn invoiced SAIC, which in turn billed the National Security Agency. *Id.* Warwick pleaded guilty to making false statements to the United States by overbilling her time. *Id.* The

vice president of BCT sought permission under the CVRA to testify as a crime victim at Warwick's sentencing. Warwick opposed that request, claiming BCT was not a victim. *Id.* at *1–2. Specifically, Warwick argued that BCT was not a victim because the indirect harm it suffered did not result from the conduct underlying her conviction. *Id.* at *2. The court rejected this argument. First, it held that Warwick "submitted false timesheets to BCT, knowing that BCT, SAIC, and NSA would rely on the timesheets for payment. Her lies to BCT were underlying an element of the crime." *Id.* Second, the court noted that BCT had reimbursed the United States the money paid because of Warwick's false statements, and thus had suffered harm that was reasonably foreseeable. *Id.* The Court concluded that BCT was a victim under the CVRA. *Id.*

In another case, the defendant ("Coon") pleaded guilty to conspiracy to deprive a bank of honest services in violation of the wire fraud statute and to commit money laundering through real estate development fraud. *In re Stewart*, 552 F.3d at 1287–88. The district court denied a petition by individuals who had obtained mortgages as part of the real estate development fraud—and unwittingly paid broker fees to Coon that otherwise would not have been owed—to be deemed victims under the CVRA. *Id.* The Eleventh Circuit reversed, holding that the petitioners were crime victims because Coon's criminal behavior obligated them to pay brokerage fees that otherwise would not have been due. *Id.* at 1288–89. In reaching its decision, the appellate court rejected an argument by the United States that the petitioners were not victims because the bank for which Coon worked, and not the petitioners, was identified as the victim in the charging document: "Under the plain language of the statute, a party may qualify as a victim, even

though it may not have been the target of the crime, as long as it suffers harm as a result of the crime's commission." *Id.* at 1289.

Here, Mr. Austin suffered direct and proximate harm as a result of the Defendants' fraud. Their fraud stripped value from Northland LLC and caused $15 million in unauthorized payments to themselves. They were acutely aware that Mr. Austin had not approved of their conduct, and took pains to conceal it from him. And they knew that if he ever found them out, they would have to pay him for the losses. Furthermore, Defendants' scheme, and their efforts to conceal it, caused additional harm to Mr. Austin individually because of the improper tax treatments they created. Because Mr. Austin was directly harmed by the fraud for which the Defendants were convicted, and that harm was foreseeable, Mr. Austin is a crime victim within the meaning of the CRVA.

## CONCLUSION

For the all the reasons set forth herein and in the extensive record in this case, Mr. Austin is a "crime victim" as that term is defined by the CVRA. Mr. Austin respectfully requests that the Court allow him to exercise his rights as a crime victim under that statute and uphold his right to be heard

Dated: May 3, 2018                    Respectfully submitted:

/s/ Dulce Foster
Dulce Foster (# 285419)
Joseph T. Dixon III (# 283903)
Alexander D. Chiquoine (# 396420)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402-1425
Telephone:   612.492.7000
Facsimile:    612.492.7077
dfoster@fredlaw.com
jdixon@fredlaw.com
achiquoine@fredlaw.com

**Attorneys for William Austin**

For the foregoing reasons and more, Starkey joins with and concurs that William Austin is a victim as that term is defined under the CVRA. Furthermore, Starkey seeks permission to file a motion on its own behalf to ask the Court to amend and clarify the February 27 Order, to reflect the Court's subsequent findings, so as to mitigate further damage and harm to Starkey and Starkey Hearing Foundation. This is of particular importance to Starkey because William Austin is not only the owner of Starkey, he is the public face of Starkey. Therefore, Starkey also seeks permission to file a motion to clarify and amend the February 27 Order.

Dated: May 3 2018

Respectfully submitted:

/s/ David Bradley Olsen
David Bradley Olsen, #197944
Scott A. Neilson, #239951
HENSON & EFRON, P.A.
220 South Sixth Street, Suite 1800
Minneapolis, MN 55402-4503
Telephone: (612) 339-2500
dolsen@hensonefron.com
sneilson@hensonefron.com

**Attorneys for Starkey Laboratories, Inc.**

63770500.11