UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
16-cr-246 (JRT/FLN)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | GOVERNMENT'S RESPONSE IN |
| Plaintiff, | ) | OPPOSITION TO DEFENDANT |
| | ) | RUZICKA'S MOTION FOR A NEW |
| 1. JEROME C. RUZICKA, | ) | TRIAL TO AVOID A MISCARRIAGE |
| 3. W. JEFFREY TAYLOR, and | ) | OF JUSTICE |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

The United States of America, by and through its attorneys, Erica MacDonald, United States Attorney, and Lola Velazquez-Aguilu, Benjamin Langner, and Surya Saxena, Assistant United States attorneys, respectfully submits this memorandum in opposition to defendant Ruzicka's motion for a new trial based on an alleged failure to disclose *Brady* material. DCD 489.

Ruzicka seeks a new trial pursuant to Federal Rule of Criminal Procedure 33. *Id.* Ruzicka's motion is entirely based on a false and misleading statement of the facts. Ruzicka, through counsel, falsely represented to the Court that in 2015 an FBI agent had a conversation with Brandon Sawalich about an antiquity given to Ruzicka. The item at issue is a letter signed by General Ulysses S. Grant dating back to 1865 that was worth around $11,000—hereinafter referred to as the "Grant Document." *Id.* at 3. Ruzicka claims that in this purported statement to the FBI, Sawalich indicated that Starkey had given the

1

letter to Ruzicka. *Id.* Although Mr. Conard acknowledges that Ruzicka possesses the item, he asserts that it was not a gift, but rather a form of "non-traditional compensation." *Id.*[1]

Ruzicka contends that whether Starkey paid "non-traditional compensation" was "hotly contested at trial" and was relevant to the Northland Counts and to Count 5, which charged Ruzicka with mail fraud relating to Ruzicka's theft of his Starkey-owned Jaguar. *Id.* at 4. Effectively, Ruzicka's argument is that the Grant Document was non-traditional compensation that was not reflected on the descending gross report. As such, Ruzicka contends this evidence would have supported his argument that the Northland payments and his theft of the Jaguar were approved compensation despite being removed or excluded from the descending gross.

Ruzicka also argues that this evidence would have been useful in impeaching Austin, who testified that there was no non-traditional compensation at Starkey. *Id.*; *see also* Trial Tr. Vol. XII at 154. Acknowledging that Ruzicka was aware of the item and certainly knew how it came into his possession, Ruzicka argues that the evidence is nonetheless undisclosed *Brady* material because he could have introduced the purported Sawalich statement into evidence and used it to impeach Austin.

---

[1] Ruzicka, through counsel, also makes allegations regarding a purported search of Austin's Beach Road home. As is clear from Agent Iannnuzzi's declaration, Mr. Conard has grossly mischaracterized their conversation. These allegations have no relevance to Ruzicka's motion and it would appear that Mr. Conard has included these salacious and inflammatory allegations simply to cast additional aspersions on the victims in this case.

### A. Because Ruzicka Was Aware of all of the Fact Relating to the Grant Document, No Additional Disclosures by the Government Were Required.

At the outset, Ruzicka bases his claims on false and misleading facts. As set forth below, Ruzicka was aware of all of the relevant facts and no additional disclosures from the government were required. As set forth in the attached declaration by FBI Special Agent John Iannuzzi, in 2015, Agent Iannuzzi assisted with the investigation and prosecution of Richard Malcolm, who was charged by indictment in the Southern District of New York with interstate transportation of stolen property and conspiracy to commit wire fraud. Iannuzzi Decl. ¶ 3. Malcolm pled guily on November 12, 2015, and pursuant to his plea agreement, agreed to the forfeiture of the Grant Document. *Id.* ¶ 4. On June 15, 2016, United States District Court Judge Kevin Duffy ordered the forfeiture of the Grant Document. *Id.* Thereafter, Agent Iannuzzi worked to locate and collect the items subject to the forfeiture order, including the Grant Document. *Id.*

Agent Iannuzzi determined that after Malcolm stole the Grant Document from a private collection in Baltimore, Maryland, he sold it to The Raab Collection—a legitimate auction company in Philadelphia, Pennsylvania. *Id.* ¶ 5. On November 2, 2014, Sawalich purchased the Grant Document from The Raab Collection for $11,500. *Id.* The Raab Collection had no knowledge that the Grant Document was stolen when they purchased it or when they sold it to Sawalich. *Id.* There is no allegation that either Sawalich or Ruzicka knew that the Grant Document had been stolen.

In March 2017, Agent Iannuzzi attempted to contact Sawalich in order to notify him of the forfeiture order. *Id.* ¶ 6. Contrary to Mr. Conard's representation that the

government "had a statement by Brandon Sawalich made to the FBI which conclusively established the transfer of some highly valuable assets to Mr. Ruzicka as non-traditional compensation," DCD 489 at 5, Agent Iannuzzi never spoke with Sawalich. Iannuzzi Decl. ¶ 6. After leaving a voicemail message for Sawalich, Agent Iannuzzi received a phone call from Scott Neilson at Henson & Efron, Starkey's attorney. Agent Iannuzzi learned from Mr. Nielson that Starkey had purchased the Grant Document and given it to Ruzicka as a gift. Nielson did not suggest that the Grant Document was a form of compensation. And there is no other evidence in the possession of the government–much less that is identified by Ruzicka–that would support Ruzicka's unsupported claim that the Grant Letter was provided as compensation.

There is no dispute that Starkey acquired the Grant Document and gave it to Mr. Ruzicka. The existence of the Grant Document and the manner in which Ruzicka came to possess it was certainly known to Ruzicka and thus Agent Iannuzzi's efforts did not trigger any additional disclosure obligations. Even if the Court were to treat Nielson's statement to Agent Iannuzzi as a statement of Starkey or Sawalich, there were no additional disclosures required from the government—Ruzicka knew he possessed the item, he knew how he got it, and he knew that he got it after the fire at his home. To the extent Ruzicka wanted to use this item to argue that the company provided him with non-traditional compensation, he had all of the information available to him to do so.

Because there was no disclosure violation, the Court need not address whether the evidence was exculpatory or material. However, even if the Court were reach the impact this purported evidence would have had on Ruzicka's defense, the Court should still deny

4

Ruzicka's motion because Ruzicka cannot meet his burden to demonstrate the evidence was favorable and material.

> **B.  The Fact That Starkey Gave Ruzicka the Grant Document was Neither Exculpatory, Impeaching, nor Material.  As Such, the Court Should Deny Ruzicka's Motion for a New Trial.**

"Under *Brady* and its progeny, prosecutors have a duty to disclose to the defense all material evidence favorable to the accused, including impeachment and exculpatory evidence." *United States v. Robinson*, 809 F.3d 991, 996 (8th Cir. 2016).  "*Brady* is violated if three requirements are met: 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *United States v. Long*, 870 F.3d 741, 747 (8th Cir. 2017) (quoting *United States v. Tyndall*, 521 F.3d 877, 881 (8th Cir. 2008)).  "The evidence is not material and no prejudice can be shown unless there is a reasonable probability that the verdict would have been different if the evidence had not been suppressed." *Id.* (internal quotation omitted).  "[M]ateriality is not established through the mere possibility that the suppressed evidence might have influenced the jury." *United States v. Ryan*, 153 F.3d 708, 712 (8th Cir. 1998).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Clemmons v. Delo*, 124 F.3d 944, 949 (8th Cir. 1997). The "critical question" is "whether the defendant received a trial resulting in a verdict worthy of confidence." *United States v. Almendares*, 397 F.3d 653, 664 (8th Cir. 2005). Undisclosed evidence, including impeachment evidence, is "material" for *Brady* purposes only if it

5

"could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995).

Ruzicka has not demonstrated that evidence relating to the Grant Document would have been impeaching. Ruzicka's argument is that the evidence of the Grant Document is impeaching because he would have used it to argue that Austin testified falsely when he said that the company did not provide non-traditional compensation. Ruzicka does not explain how he would have demonstrated that the Grant Document was compensation versus a gift and contrary to his false assertion, the company has never claimed to have provided the Grant Document to him as compensation. As indicated by Agent Iannuzzi's declaration, the information he had obtained indicated that the Grant Document was provided to Ruzicka as a gift. Indeed, that information is consistent with Ruzicka's failure to claim the Grant Document as compensation on either his 2014 or 2015 tax returns. Ruzicka's failure to claim the Grant Document as compensation corroborates his understanding, and the company's assertion through Nielson, that the Grant Document was provided to him as a gift. Accordingly, Ruzicka has failed to demonstrate that the evidence regarding the Grant Document was favorable to him—even as impeachment evidence.[2]

Ruzicka has also failed to demonstrate that this evidence was material or that he suffered prejudice as a result of its purported nondisclosure. Again, Ruzicka cannot meet

---

[2] Additionally, Ruzicka has failed to demonstrate how he could have used a statement by Nielson to impeach Austin in light of the rules against hearsay. To the extent that Ruzicka contends he would have offered Nielson's statement as evidence of the conveyance, this is an out of court statement being offered for the truth of the matter asserted. Nor does Nielson have any independent knowledge of the facts contained in the statement, thus implicating a second layer of hearsay.

his burden to demonstrate a *Brady* violation unless he shows that "there is a reasonable probability that the verdict would have been different if the evidence had not been suppressed." *Long*, 870 F.3d at 747.  Not only was this evidence effectively duplicative of other evidence disclosed to Ruzicka, Ruzicka pointed to other purported non-traditional compensation during his cross-examination of Austin, and Ruzicka says nothing about why or how this one piece of additional information undermines confidence in the verdict.

Attached as Exhibits 1 through 4 are copies of Starkey emails—which were produced to Ruzicka and easily found through rudimentary searches—demonstrating that Starkey provided gifts to Ruzicka (*e.g.* purchasing a suite and tickets for various concerts, memorabilia, and vacations) at various points during the scheme charged in the Superseding Indictment, similar to the manner in which the Grant Document was given to Ruzicka.  Ruzicka's claim that Starkey's gift of the Grant Document was material to his defense is belied by his decision not to even inquire regarding these similar instances.

Furthermore, Ruzicka did questioned Austin about forms of non-traditional compensation that Starkey purportedly provided to its employees, including a home that Austin purportedly gave to Ruzicka (undoubtedly this home was worth more than $11,000), as well as forgiven loans and insurance policies.  Trial Tr. at 156-160.  Any additional questioning regarding the Grant Document would have been duplicative, and even less probative, of this line of questioning—which the jury clearly found unpersuasive.  As such, Ruzicka has failed to demonstrate that the purported additional evidence regarding the Grant Document undermines confidence in the verdict.  Accordingly, Ruzicka has failed to demonstrate a *Brady* violation warranting a new trial.

7

**C.     Conclusion**

Ruzicka has failed to demonstrate a disclosure violation just as he has failed to demonstrate that the purported evidence was favorable to him and material. Accordingly, the Court should deny Ruzicka's motion for a new trial.

Dated:  June 29, 2018                                                   Respectfully submitted,

                                                                                              ERICA MacDONALD
                                                                                              United States Attorney

                                                                                              *s/ Lola Velazquez-Aguilu*

                                                                                              BY:  LOLA VELAZQUEZ-AGUILU
                                                                                              Assistant U.S. Attorney
                                                                                              Attorney ID No. 0389486