# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 16-246(1) (JRT/SER) |
| Plaintiff, | |
| v. | **SENTENCING MEMORANDUM ON FORFEITURE AND RESTITUTION** |
| JEROME C. RUZICKA , | |
| Defendant. | |

Erica H. MacDonald, United States Attorney, and Benjamin F. Langner, Craig R. Baune, and Surya Saxena, Assistant United States Attorneys, **UNITED STATES ATTORNEY'S OFFICE,** 300 South Fourth Street, Suite 600, Minneapolis, MN  55415, for plaintiff.

John C. Conard, **John C. Conard PLLC,** 310 Fourth Avenue South, Suite 5010 Minneapolis, MN  55415, for defendant.

Defendant Jerome C. Ruzicka was found guilty of four counts of mail fraud, three counts of wire fraud, and one count of making and subscribing a false tax return. (Verdict, Mar. 8, 2018, Docket No. 417.)  On December 19, 2018, the Court sentenced him to 84 months' imprisonment, ordered him to pay restitution, and granted in part and denied in part a Motion for Preliminary Order of Forfeiture brought by the United States.  This memorandum supplements the Court's determination regarding forfeiture and restitution.

## BACKGROUND

Ruzicka was indicted on 25 separate counts. (3d Superseding Indictment ("Indictment"), Jan. 8, 2018, Docket No. 298.) Underlying the Indictment were a series of alleged fraudulent transactions connected to three separate schemes to defraud Ruzicka's employer, Starkey Laboratories ("Starkey"), and Sonion A.S. ("Sonion"). Three counts related to a company called Northland Hearing Centers, Inc. ("Northland") and restricted stock payments made to Ruzicka. (*Id.* ¶ 58.) Twelve counts related to an alleged sham entity called Archer Consulting, Inc. ("Archer") and payments made from Starkey to Archer, which were then distributed in part to Ruzicka. (*Id.* ¶¶ 58–62.) Three counts related to companies called Archer Acoustics and Claris Investments, which were controlled in part by Ruzicka. (*Id.* ¶ 60.) One count charged Ruzicka with stealing a company Jaguar from Starkey. (*Id.* ¶ 58.) Three counts related to various alleged payments made from Starkey and ordered by Ruzicka. (*Id.*) Additionally, one count included a conspiracy charge against all the defendants in the case, and alleged that all of the above listed actions and companies were part of one conspiracy to defraud. (*Id.* ¶ 17-56.) Finally, two counts charged Ruzicka with making false tax returns. (*Id.* ¶¶ 66.)

After a jury trial, Ruzicka was found guilty on all three counts involving Northland, two of the three Claris Investments and Archer Acoustics counts, one of the two counts involving his tax returns, and the count involving the Jaguar. (Verdict at 1–4.) Additionally, he was found guilty on just one of the twelve counts pertaining to Archer. (*Id.* ¶¶ 4, 8, 13-18, 20-23.) That count, Count 4, alleged that Ruzicka caused a check in the amount of $60,000 to be sent from Archer's bank account, and that this action was in

furtherance of a scheme to defraud Starkey, thereby constituting mail fraud in violation of 18 U.S.C. § 1341.  (Indictment ¶ 58.)  As the Court has previously noted, the jury's verdict as to the Archer counts is largely difficult to reconcile.  *See United States v. Ruzicka*, 333 F. Supp. 3d 853, 873 (D. Minn. 2018) (noting that some of the Archer conduct for which the jury convicted Ruzicka "is effectively indistinguishable" from other Archer conduct on which the jury acquitted Ruzicka).

Before sentencing, the United States filed a Motion for a Preliminary Order of Forfeiture, seeking the forfeiture of property and money Ruzicka obtained as a result of his fraudulent schemes.  (Mot. for Prelim. Order of Forfeiture, Nov. 16, 2018, Docket No. 561.)  Specifically, the United States requested the forfeiture of funds in Edward Jones Account No. 808-09541-1-1; Lincoln National Life Insurance Company Policy No. 4877260; $310,680.53 from an Edward Jones Individual Retirement Account ("IRA") No. 808-81410; a 2011 Jaguar; and a money judgment forfeiture in the amount of $2,714,628.95.[1]  (*Id.* at 2.)

The United States argued that the property it sought was subject to forfeiture because it represents the proceeds of the criminal activity for which Ruzicka was convicted. Specifically, the funds in the Edward Jones account came from the Northland transaction and the Lincoln life insurance policy was purchased with money Ruzicka obtained from the Northland transaction.  (*Id.* at 2-3.)  The United States argued that the Jaguar was

---

[1] The United States also requested a general order of forfeiture pursuant to Fed. R. Crim. P. 32.2(b)(2)(C) and an order authorizing discovery to locate additional assets that may be subject to forfeiture.  (Mot. for Prelim. Order of Forfeiture at 1.)

subject to forfeiture because it was the same Jaguar that Ruzicka was found guilty of stealing. (*Id.* at 3.) Finally, the United States argued that the money in the Edward Jones IRA account was subject to forfeiture because it was directly traceable to the Archer scheme, and that the money judgment was proper because it represented "the amount of proceeds that Ruzicka obtained" from the Archer scheme. (*Id.* at 2-3, 11.)

The United States also, in preparation for sentencing, submitted restitution requests from Starkey and Sonion. Starkey requested restitution in the amount of $25,600,052.77, partly based on the money Ruzicka received from the alleged Archer scheme. (Presentence Investigation Report ("PSR") ¶ 72, Nov. 16, 2018, Docket No. 559.) Sonion sought restitution in the amount of $1,769,178.34. (*Id.* ¶ 73.) The United States sought restitution to the IRS for $58,143.00. (*Id.* ¶ 145.)

## DISCUSSION

## I.    FORFEITURE

Under 18 U.S.C. § 981, "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of" the mail and wire fraud statutes is subject to forfeiture. 18 U.S.C. § 981(a)(1)(C); *see also* 18 U.S.C. § 1956(c)(7)(a); 18 U.S.C. § 1961(1); and 28 U.S.C. § 2461(c). "[I]f the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense." Fed. R. Crim. P. 32.2(b)(1)(A). "The government must prove the elements of forfeiture under 18 U.S.C. § 982(a)(1) by a preponderance of the evidence." *United States v. Beltramea*, 785 F.3d 287, 290 (8th Cir.

2015) (citations omitted).   The same standard applies to forfeiture under 28 U.S.C. §

2461(c).  *Id.*  Forfeiture is therefore proper when a court finds by a preponderance of the

evidence that the property requested is traceable to the violation of a convicted crime for

which forfeiture is authorized.

There is no debate that the funds in the Edward Jones account and the life insurance

policy are subject to forfeiture.  Both the money in the account and the money used to

purchase the policy are directly traceable to the Northland transaction, for which Ruzicka

was convicted.  Likewise, there is no debate that the Jaguar is subject to forfeiture, as it is

directly traceable to Count 5, for which Ruzicka was convicted.  Therefore, the Court will

grant the Motion for Preliminary Order of Forfeiture with respect to that property.

The main dispute between the United States and Ruzicka involves the forfeiture

based on Count 4.  The United States argues that, because Count 4 charged Ruzicka with

partaking in a scheme to defraud Starkey through Archer, and because courts have held

that all proceeds from a scheme to defraud—not just the proceeds from convicted

charges—are forfeitable, the IRA account and the money judgment are proper subjects of

forfeiture.  Ruzicka argues that, because he was acquitted on eleven of twelve counts

regarding Archer, forfeiture of the amounts the United States requests is improper.

The United States cites case law from outside of the Eighth Circuit for the

proposition that forfeiture of all the proceeds obtained from a scheme to defraud—not just

the proceeds of a count of conviction—are subject to forfeiture, and that this rule extends

even to proceeds tied to conduct for which a defendant was acquitted.[2]  It argues that the Eighth Circuit's rulings on forfeiture statutes other than the one at issue here signal that the Eighth Circuit has accepted the concept that proceeds from acquitted charges may be subject to forfeiture.

The Court agrees it is likely that the Eighth Circuit would join the circuit courts that have explicitly held that proceeds stemming from acquitted counts may be subject to forfeiture under 18 U.S.C. § 981.  Nevertheless, the United States still must prove by a preponderance of the evidence that the funds in the IRA account and the $2,714,628.95 it seeks through a money judgment are directly traceable to Count 4.

The United States, in attempting to meet its burden, argues that the mailing underlying Count 4 constituted just one execution of a larger scheme to defraud Starkey through Archer.  Count 4 charged Ruzicka with mail fraud, and was based on a February 3, 2015 check sent from Archer to Paychex Retirement Services in the amount of $60,000. The United States argues that this one execution of mail fraud is indicative of the entire Archer scheme, which allegedly started in 2006 and ran through 2015, and that all the Archer payments are subject to forfeiture.  In support, it submitted extensive financial documentation tracing the various payments made from Starkey to Archer, and from Archer to Ruzicka.  (*See* Decl. of J. Matthew Snell, Nov. 16, 2018, Docket No. 564.)

---

[2] The United States cites *United States v. Lo*, 839 F.3d 777(9th Cir. 2016); *United States v. Cox*, 851 F.3d 113 (1st Cir. 2017); and *United States v. Venturella*, 585 F.3d 1013 (7th Cir. 2009).

However, the United States has not proven by a preponderance of the evidence that all of the money obtained by Ruzicka from Archer between 2006 and 2015 is directly traceable to the illegal scheme underlying Count 4.  As the Court previously noted, "the full nature of the [Archer] scheme is difficult to discern." *Ruzicka*, 333 F. Supp. 3d at 873. That statement remains true.  While the jury determined that Ruzicka engaged in a scheme, and that the February 3 mailing was a part of that scheme, it is not clear to the Court by a preponderance of the evidence that the mailing underlying Count 4 was one part of a broader scheme that lasted nonstop from 2006 to 2015.

Clearly, the jury was also unsure of what place the February 3 mailing had in the larger scheme.  As noted, the jury acquitted Ruzicka of eleven other mail and wire fraud counts that related to the payments Archer received.  Those counts were based on mailings and wirings spanning from 2012 to 2015, which the government argues only encompassed part of the entire scheme.  Despite the limited time period underlying the charged conduct, the jury did not find that Ruzicka was guilty for any of those additional mailings or wirings, even though the conduct was nearly identical to the conduct underlying Count 4.

While the jury's determinations are not dispositive of the issue of forfeiture, they do indicate the substantial confusion surrounding the Archer scheme, including how long or wide-reaching it may have been.  For that reason, the Court does not find that the United States has proven by a preponderance of the evidence that all the Archer proceeds were tied to the scheme charged in Count 4, and does not believe it is appropriate to speculate as to when the scheme underlying the Count 4 conviction started or what conduct it encompassed.  As Ruzicka and his codefendant W. Jeffrey Taylor have pointed out, there

was significant evidence produced at trial that Bill Austin knew of Archer Consulting for some time, knew that Taylor was involved with Archer, and knew that Starkey was paying Archer for various reasons. Additionally, the indictment acknowledged that from 2006 to 2010 Ruzicka and Taylor, through Archer, billed Starkey for commissions, but from 2010 to 2015 billed Starkey for consulting. While the United States summarily contends that all the Archer payments were part of the scheme as charged in Count 4, the Court does not find that they have proven as much by a preponderance of the evidence. Accordingly, the Court will only grant forfeiture on Count 4 for $30,000, encompassing the amount charged in that Count and attributable to Ruzicka.

## II.    RESTITUTION

The Mandatory Victims Restitution Act ("MVRA") applies to this case. 18 U.S.C. §§ 3663A, 3664. As its name suggests, the MVRA makes restitution mandatory when it applies. The MVRA provides that "the court shall order . . . that the defendant make restitution to the victim" of property crimes. *Id*. § 3663A(a)(1), (c)(1)(A)(ii).

For MVRA purposes, a "victim" is one who is "directly and proximately harmed as a result of the commission of [the] offense," including one who is "directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." *Id*. § 3663A(a)(2). "Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government." *Id*. § 3664(e).

## A.  Restitution to Starkey

As an initial matter, Ruzicka argues that determining Starkey's restitution would be overly complex and that the Court should therefore refuse to make any award.  By the MVRA's own terms, it does not apply if the Court makes a factual finding that "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process."  18 U.S.C. § 3663A(c)(3)(B).  District courts have discretion in refusing to order restitution pursuant to the MVRA's complexity provision.  *United States v. Martinez*, 690 F.3d 1083, 1089 (8th Cir. 2012); *United States v. Oslund*, 453 F.3d 1048, 1063 (8th Cir. 2006).  The Court, however, does not find the issues involved overly complex, and will grant restitution to Starkey.

Starkey submitted a restitution request in the amount of $25,600,052.77.  At the hearing on this issue, the Court awarded Starkey restitution in the amount of $18,145,773.94.  Upon further review of the submitted materials, the Court will amend that number slightly, and award Starkey $17,203,273.94.

The Court arrives at this amended restitution award for two reasons.  First, part of Starkey's request was based on Ruzicka's Archer conduct, for which Starkey believes it is owed $7,651,189.73.  The PSR states, and the United States argues, that this entire amount is proper.  However, for the same reasons the Court rejected much of the United States' forfeiture demand regarding the Archer scheme, the Court finds that the United States has not shown by a preponderance of the evidence that all of the $7,651,189.73 is linked to

Count 4, the only count of conviction for Archer conduct. At most, the Court would award $60,000 to Starkey based on Ruzicka's conviction on Count 4. However, as discussed at the sentencing for Ruzicka's co-defendant Taylor, because the United States is already receiving $60,000 in forfeiture from Ruzicka and Taylor and may apply that amount to Ruzicka's restitution, the Court will not grant Starkey restitution for any of the conduct related to Count 4.

Second, Starkey requested $745,589.10 for various bonuses it believes Ruzicka obtained fraudulently and awarded himself in 2008. While the PSR submits that this entire amount is proper for restitution, the United States acknowledges that "the government's investigation did not determine definitively that this bonus was the product of fraud." (Gov't Response at 35-36, Dec. 12, 2018, Docket No. 605.) Accordingly, the Court does not find that the United States proved by a preponderance of the evidence that Starkey is owed restitution for the 2008 bonuses.

However, the Court will grant Starkey's restitution request in all other respects, finding that the United States proved each individual request by a preponderance of the evidence. Accordingly, the Court will award Starkey $17,203,273.94 in restitution. Of this total, $2,525,000 is owed jointly and severally with Ruzicka's co-defendant Scott Nelson.

### B. Restitution to Sonion

Sonion submitted a restitution request in the amount of $1,769,178.34. A large portion of the request incorporates legal fees that Sonion incurred for its involvement with this case. Ruzicka objects to the inclusion of those legal fees.

"As a general matter, a victim's legal and investigatory fees are recoverable as restitution in a criminal case." *United States v. Hogeland*, Crim. No. 10-0061 PJS/AJB, 2012 WL 4868904, at *3 (D. Minn. Oct. 15, 2012) (citing *United States v. Stennis-Williams*, 557 F.3d 927, 930 (8th Cir.2009). However, as in *Hogeland*, the United States has not provided any evidence to support Sonion's requested restitution for legal fees, "and thus the Court is unable to determine whether that figure accurately represents the fees and expenses" Sonion incurred. *Id.* Accordingly, the Court does not find the United States proved by a preponderance of the evidence that Sonion is entitled to restitution for legal fees.

Removing the legal fees and other non-reimbursable requests Sonion submitted, Sonion's request is narrowed to $338,310.14. This amount is based on Ruzicka's two convictions (Counts 7 and 19) for his role in the Archer Acoustics scheme, which worked to defraud Sonion. Ruzicka objects to this request. First, he points out that Counts 7 and 19 charge Ruzicka with transferring only $46,776.80 and $54,836.95, respectively. Thus, he argues that the remainder of the $338,310.14 is not tied to either offense and that there is no indication that the remainder came from the same scheme to defraud Sonion.

The Court finds this argument unconvincing. The United States submitted substantial evidence regarding Ruzicka's involvement with Archer Acoustics and about the scheme to defraud Sonion through that company. Like forfeiture, "restitution may be ordered for criminal conduct that is part of a broad scheme to defraud, even if the defendant is not convicted for each fraudulent act in the scheme." *United States v. Cornelsen*, 893 F.3d 1086, 1091 (8th Cir. 2018). Although the remainder of the $338,310.14 is not tied to

a specific offense of conviction, the Court finds that the United States proved by a preponderance of the evidence that it was part of the Archer Acoustics scheme.

On top of Sonion's request, the PSR and the United States argue that Sonion is owed an additional $358,582.24. This additional amount comes from Ruzicka's operation of another company, Claris Investments. The United States argues that Claris operated in a similar manner as Archer Acoustics and was used to defraud Sonion. Ruzicka's operation of Claris was the subject of Count 6, of which Ruzicka was acquitted.

The Court does not find that the United States proved by a preponderance of the evidence that the Claris amounts are sufficiently tied to a count of conviction to order restitution. The United States argues that Claris and Archer Acoustics were both operated as part of one larger scheme to defraud Sonion. However, the jury acquitted Ruzicka for his Claris conduct. Although the acquittal is not dispositive of the restitution question here, it is indicative of the fact that the United States has not sufficiently shown that the two companies operated as one scheme. Accordingly, the Court will limit Sonion's restitution amount to that which it requested, minus the legal fees and other non-reimbursable amounts, and award Sonion, $338,310.14, owed jointly and severally with Taylor.

### C. Restitution to the Internal Revenue Service

The Internal Revenue Service ("IRS") submitted a restitution request in the amount of $58,143.00. This amount is connected directly to Count 25, which charged Ruzicka with making and subscribing a false tax return. Ruzicka presents no arguments as to this claim, and the United States submitted evidence that Ruzicka's tax fraud cost the IRS $58,143.00. Accordingly, the Court will award $58,143.00 to the IRS.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The United States' Motion for a Preliminary Order of Forfeiture as to Defendant Ruzicka [Docket No. 561] is **GRANTED** in part and **DENIED** in part.

2. Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), Defendant Ruzicka is ordered to forfeit the following property to the United States:

   a. All funds and holdings in Edward Jones Account No. 808-09541-1-1;

   b. Lincoln National Life Insurance Company Policy No. 4877260;

   c. a 2011 Jaguar, VIN: SAJWA2JC5BMV07033;

   d. $30,000 of funds or other holdings held in Edward Jones Individual Retirement Account No. 808-81410.

3. Ruzicka must also forfeit any property which constitutes or is derived from proceeds traceable to the offenses for which he has been convicted, which property has not yet been identified or located.

4. The United States may take discovery to identify additional assets potentially subject to forfeiture.

5. The Court shall retain jurisdiction to enforce this Order and will amend it if additional specific property is identified pursuant to Federal Rule of Criminal Procedure 32.2(b)(2)(C).

6. The United States' Motion for a Preliminary Order of Forfeiture is **DENIED** as to the $2,714,628.95 money judgment against Ruzicka.

7. Ruzicka is ordered to pay restitution in the following amounts:

    a. $17,203,273.94 to Starkey Laboratories, of which $2,525,000 is owed jointly and severally with Scott Nelson;

    b. $338,310.14 to Sonion A.S., owed jointly and severally with W. Jeffrey Taylor;

    c. $58,143.00 to the Internal Revenue Service.


DATED: May 15, 2019
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
Chief Judge
United States District Court