# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JEROME C. RUZICKA,<br><br>Defendant. | Criminal No. 16-246(1) (JRT/SER)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR RELEASE PENDING APPEAL** |

Erica H. MacDonald, United States Attorney, and Benjamin F. Langner, Craig R. Baune, and Surya Saxena, Assistant United States Attorneys, **UNITED STATES ATTORNEY'S OFFICE,** 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for plaintiff.

John C. Conard, **John C. Conard PLLC,** 310 Fourth Avenue South, Suite 5010, Minneapolis, MN 55415, for defendant.

Before the Court is Defendant Jerome C. Ruzicka's Motion for Release Pending Appeal. (Mot. for Release, June 14, 2019, Docket No. 693.) Because the Court will find that Ruzicka has not shown that his appeal presents a substantial question, the Court will deny the motion.

## BACKGROUND

Ruzicka was found guilty by a jury of four counts of mail fraud, three counts of wire fraud, and one count of making and subscribing a false tax return. (Verdict, Mar. 8, 2018,

Docket No. 417.)[1] On December 19, 2018, the Court sentenced Ruzicka to 84 months' imprisonment. (Minute Entry, Dec. 19, 2018, Docket No. 627.) On July 8, 2019, Ruzicka will report to the Bureau of Prisons to begin serving his sentence. (Am. Sentencing J. at 2, May 31, 2019, Docket No. 688.)

Ruzicka has challenged the evidentiary support of the jury's verdict as well as the legal soundness of various rulings made by the Court numerous times. Nevertheless, the Court has repeatedly upheld the verdict and denied Ruzicka's requests for a new trial. Ruzicka has now filed an appeal with the intent to raise many of the same arguments that he previously raised before the Court. (Notice of Appeal, May 29, 2019, Docket No. 676.) In the interim, Ruzicka filed the present motion for bail pending his appeal, and asks the Court to postpone the beginning of his sentence until his appeal is fully decided. (Mem. in Supp. at 1, June 14, 2019, Docket No. 693-1.)

## DISCUSSION

### I. Standard of Review

18 U.S.C. § 3143(b) provides that, ordinarily, a person "found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained." However, the Court may order the release of such a person if several perquisites are met. First, the Court must find that "the person is not likely to

---

[1] The Court previously summarized the factual allegations against Ruzicka in its order on the parties' motions in limine. *United States v. Ruzicka* (*MILs Order*), No. 16-246, 2018 WL 385422, at *1-2 (D. Minn. Jan. 11, 2018) (Docket No. 308). The Court also previously summarized the evidence produced at trial in its order denying Ruzicka's post-trial motions, (Mem. Op. and Order Denying Post-Trial Motions ("Post-trial Order"), Sept. 7, 2018, Docket No. 542.) The Court hereby incorporates the facts as discussed in both of those orders.

flee or pose a danger to the safety of any other person or the community." *Id.* at § 3143(b)(1)(A). Second, the Court must find that "the appeal is not for the purpose of delay." *Id*. at § 3143(b)(1)(B). Finally, the Court must find that the appeal "raises a substantial question of law or fact likely to result" in a reversal, an order for a new trial, a sentence short of imprisonment, or a sentence "less than the total of the time already served plus the expected duration of the appeal process." *Id.*

The Eighth Circuit defines a "substantial question" as a "close question or one that could go either way." *United States v. Powell*, 761 F.2d 1227, 1233-34 (8th Cir. 1985) (en banc). Once a defendant shows that he or she is raising a substantial question, the defendant must then show that "the substantial question he or she seeks to present is so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor." *Id.* at 1234. Following these principles will "carry out the manifest purpose of Congress to reduce substantially the numbers of convicted persons released on bail pending appeal, without eliminating such release entirely or limiting it to a negligible number of appellants." *Id.*

## II.     Substantial Question

The United States does not argue that Ruzicka is likely to flee or pose a danger to the community, nor does it argue that Ruzicka's appeal is for the purposes of delay. The Court agrees. Thus, the only question before the Court is whether any of Ruzicka's arguments on appeal present a substantial question and, if so, whether a resolution in his favor would result in a new trial, reversal, or a significant decrease in his imprisonment. While the entire scope of Ruzicka's appeal is not yet known, his present motion puts forth

3

a number of grounds that he believes raise substantial questions and support his motion for release. The Court will discuss each in turn.

**A. Insufficient Evidence**

Ruzicka first argues, as he did in his post-trial motions, that there was insufficient evidence to support the jury's verdict on the Northland counts. Ruzicka acknowledges the Court's prior ruling that Bill Austin's lack of knowledge about the 2013 Northland stock redemption supports the verdict by itself. However, he now argues that Austin had constructive knowledge about the redemption because the redemption was reported to individuals with a fiduciary duty to Austin. Ruzicka further argues that the jury could not have found an intent to defraud based on the evidence presented because Ruzicka made individuals with a fiduciary duty to Austin aware of the alleged fraud. Therefore, he asserts, Ruzicka's Northland fraud convictions are unsustainable.

"In reviewing challenges to the sufficiency of the evidence," the Eighth Circuit "view[s] the evidence in the light most favorable to the government and sustain[s] the jury's verdict if there is substantial evidence in the record to support it." *United States v. Andrade*, 788 F.2d 521, 525 (8th Cir. 1986) (citations omitted). A conviction is reversed "only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Wells*, 706 F.3d 908, 914 (8th Cir. 2013) (quoting *United States v. Yang*, 603 F.3d 1024, 1026 (8th Cir. 2010))

To prove mail and wire fraud, the United States needed to show that Ruzicka "participated in a scheme to defraud another out of money or property by means of materially false representations or promises" and that he did so "with the intent to defraud."

4

(Jury Instrs. at 32, Mar. 9, 2018, Docket No. 396.) Essentially, Ruzicka argues here that there was insufficient evidence of his intent to defraud because those with a fiduciary duty to Austin knew of the 2013 stock redemption in part because Ruzicka made them aware of the redemption.

However, as the United States points out, Ruzicka made this same argument to the jury, which nevertheless found him guilty. At trial, the United States presented significant evidence regarding Ruzicka's attempts to conceal the stock redemption from Austin. Ruzicka does not contest that evidence, instead he puts forth one alternative explanation based on other pieces of evidence. But the Court's role, and the Eighth Circuit's role, is not to decide which explanation of the evidence is more credible, but to look at the jury's determination and decide whether it is based on sufficient evidence. Given the evidence presented by the United States that Ruzicka consistently attempted to conceal the stock redemption, the Court makes such a finding—that there was sufficient (or substantial) evidence to support the jury verdict on these counts. Further, given the extremely deferential nature with which the Eighth Circuit must view sufficiency challenges, the Court does not find that Ruzicka's sufficiency argument presents a "close question or one that could go either way." *Powell*, 761 F.2d at 1233-34. Accordingly, the Court does not find that a substantial question exists as to the sufficiency of the evidence on the Northland convictions.

### B. *Brady* and *Giglio* Violations

Ruzicka next argues that the Court erred in denying his post-trial *Brady/Giglio* motions that were based on the non-disclosure of a pre-trial reverse proffer meeting with

Ruzicka's co-defendant Nelson. (*See* Order Denying Brady Mot., Mar. 15, 2019, Docket No. 654; Order Denying Mot. for Reconsideration, May 15, 2019, Docket No. 665.) Ruzicka spends considerable time in the present motion once again attacking the United States' failure to disclose the meeting and highlighting the various instances at which he argues the United States should have disclosed the meeting. The Court is well aware of the factual circumstances regarding the meeting, and has already ruled that the meeting and the materials shown to Nelson at the meeting should have been disclosed to Ruzicka before the trial. (Order Denying Mot. for Reconsideration at 6-7.) Accordingly, the Court required the United States to turn over the materials. (*Id.*)

However, the Court denied Ruzicka's overall *Brady* motion because, even considering the United States' failure, Ruzicka had not shown prejudice. In order to establish a *Brady* violation, Ruzicka needed to show that "(1) the evidence at issue is material and favorable to the defendant; (2) the evidence was suppressed by the government; and (3) the defendant was prejudiced by the suppression." *United States v. Parker*, 267 F.3d 839, 846 (8th Cir. 2001).

Now, Ruzicka argues that—because the ultimate plea deal between Nelson and the United States was more favorable to Nelson than the one presented at the undisclosed meeting—the nondisclosure deprived him of knowing the evolution of Nelson's deal. He asserts that this knowledge would have allowed him to impeach Nelson's testimony and show the jury the power that the United States had over Nelson. The Court is unpersuaded and is unsure how evidence that Nelson turned down a lesser deal would have impeached Nelson any more than evidence that Nelson accepted a better deal, a deal of which the jury

was aware. Further, even if the nondisclosed meeting was introduced at trial, the Court does not believe that the result would have changed.

Ruzicka has still not shown how he was sufficiently prejudiced by the nondisclosure to justify his *Brady* requests, and the Court therefore does not find that he has presented a substantial question. Accordingly, the Court will deny his motion for release as to this argument.

### C. Jencks Violation

Also related to the above nondisclosure, Ruzicka argues that the United States committed a Jencks Act violation because it did not previously produce the FBI reports of Agent Brian Kinney, prepared during and after the Nelson reverse proffer. Because Ruzicka just recently learned that there were such reports, he has not had the opportunity to raise this argument before, and the Court has not previously considered this matter. Nevertheless, Ruzicka argues that whether a Jencks Act violation occurred and whether he should be granted a new trial present substantial questions.

The Jencks Act requires the United States, following a motion of a defendant, "to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified" on direct examination. 18 U.S.C. § 3500(b). "A conviction can only be overturned under the Jencks Act if there was bad faith by the government and prejudice to the defendant." *United States v. Vieth*, 397 F.3d 615, 619 (8th Cir. 2005) (citing *United States v. Greatwalker*, 356 F.3d 908, 911 (8th Cir. 2004)). Thus, to receive a new trial based on a Jencks Act violation, Ruzicka must

7

show that the reports were covered by the Jencks Act, that the government withheld the reports in bad faith, and that he was prejudiced by the withholding.

Ruzicka summarily asserts that the Jencks Act covers Kinney's reports about the reverse proffer meeting because Kinney "testified for three days, including testimony about witness interviews, 302 reports, and the process and integrity of the investigation." (Mem. in Supp. at 16.)

The United States, on the other hand, argues that the reports are not covered by the Jencks Act because they are not within the scope of Kinney's testimony at trial. The United States presents several Eighth Circuit cases that indisputably limit the scope of the Jencks Act to reports and statements that directly relate to subject matter of the testimony given. Particularly relevant to this case is *United States v. Jewell*, 614 F.3d 911 (8th Cir. 2010). In that case, the defendant argued that "the district court erred when it refused to order the disclosure of certain interview memoranda and notes prepared by [an] IRS agent" after he interviewed witnesses as part of the IRS's investigation. *Id.* at 924. The Eighth Circuit disagreed and held that the United States is not compelled "to hand over its entire case file of interviews and notes or other materials" where the agent only testifies about specific aspects of the investigation and does not testify about those particular interviews. *Id.* at 925.

There, as here, the defendant cited *United States v. New*, 491 F.3d 369 (8th Cir. 2007). In that case, the nonproduction of an agent's "five-page case report 'that sets forth actions that [the agent] took on the date of the accident and observations that he made at the scene of the accident'" was a violation of the Jencks Act. *Id.* (quoting *New*, 491 F.3d

8

at 376). But the *Jewell* court distinguished the witness interview reports it was considering from the more comprehensive report in *New*, clarifying that the report in *New* was Jencks Act material because the report described what the agent saw and did at the crime scene, and the agent testified about those matters. *Id.*

Like *Jewell*, and contrary to *New*, the Court does not find that Kinney's reports sufficiently relate to his testimony. The reports at issue here summarize the reverse proffer meeting, including a description of the evidence presented to Nelson and the plea deal the United States was offering at that time. (Resp. in Opp., Ex. 1 at 3-5, June 24, 2019, Docket No. 697-1.) The reports do not contain or summarize any statements made by Nelson, nor do they discuss Kinney's investigation or any actions or tactics used in that investigation. (*Id.*) They are simply a memorialization of the reverse proffer meeting. At trial, Kinney did not testify about the reverse proffer meeting nor Nelson's plea agreement. Ruzicka's argument that the Jencks Act covers the reports because Kinney testified about "witness interviews, 302 reports, and the process and integrity of the investigation" does not meet the test the Eighth Circuit has set out that the subject of the testimony must clearly encompass the subject of the report.

Further, the Court does not find that Ruzicka was prejudiced by the nondisclosure even if the reports did constitute Jencks Act materials. Ruzicka argues that access to the reports would have allowed him to cross-examine Kinney "on the practice of recruiting cooperating witnesses, the use of leverage, the dangers imposed and the evolution of the offer made to Scott Nelson." (Mem. in Supp. at 17.) However, Ruzicka does not put forth any explanation as to how the exploration of these matters would have been relevant to the

overall trial, nor how it could have possibly affected the outcome of the trial. At most, and as Ruzicka has previously asserted, this cross-examination could have hypothetically been relevant to Nelson's credibility. But the Court has already repeatedly ruled that the jury's awareness of the ultimate plea deal allowed the jury to consider that issue. (Order Denying Brady Mot. at 5-6; Order Denying Mot. for Reconsideration at 8-9.) The Court does not find that any further examination would have affected Nelson's credibility any more than it already was, and certainly not to the extent that the jury's verdict could have changed.

Because the Court finds that Kinney's reports were not covered by the Jencks Act and that Ruzicka suffered no prejudice even if they were, and because the Court does not find that these issues present a substantial question to the Eighth Circuit, the Court will deny Ruzicka's motion for release on this argument.

### D. *Napue* Violations

Ruzicka next argues that the Court should have ordered a new trial or a mistrial due to the United States' alleged *Napue* violations. During the trial, the Court found that the United States would violate *Napue v. Illinois*, 360 U.S. 264 (1959) if it did not correct knowingly false statements made at trial by Austin. Accordingly, the Court allowed the United States to remedy the potential violation and correct Austin's testimony during the trial, and the Court found that the United States did in fact remedy the violation. (Mem. Op. & Order, Mar. 5, 2018, Docket No. 391.) The Court, at the end of trial, instructed the jury that the relevant portions of Austin's testimony were indeed false and that the jury could use that fact in assessing Austin's credibility. (Jury Instrs. at 57.)

After trial, Ruzicka moved the Court for a new trial based on *Napue* and argued that the United States did not adequately remedy the violations the Court previously identified. (Ruzicka's Mot. for a New Trial – *Napue* Violations, Apr. 12, 2018, Docket No. 437.) He also cited additional examples of Austin's supposed false testimony. After reviewing each instance put forth by Ruzicka the Court determined either that the United States did not commit a *Napue* violation or that Ruzicka was not prejudiced because the Court's instruction regarding Austin's credibility was sufficient to remedy the violations. *United States v. Ruzicka*, 333 F. Supp. 3d 853, 868-71 (D. Minn. 2018). Accordingly, the Court did not grant Ruzicka a new trial.

Now, Ruzicka argues that the Court erred and should have granted him a new trial. To prove a <u>*Napue*</u> violation, the defendant must show "(1) the prosecution used perjured testimony; (2) the prosecution should have known or actually knew of the perjury; and (3) there was a reasonable likelihood that the perjured testimony could have affected the jury's verdict." *United States v. West*, 612 F.3d 993, 996 (8th Cir. 2010) (quoting *United States v. Bass*, 478 F.3d 948, 951 (8th Cir. 2007). "A new trial is required if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury.'" *Giglio v. United States*, 405 U.S. 150, 154 (1972) (alteration in original) (quoting *Napue*, 360 U.S. at 271).

While Ruzicka focuses on what he perceives to be the United States' misconduct, alleging that it knew of the various instances of Austin's incorrect testimony, he does not explain in what way he was prejudiced to the extent that the jury's verdict might have changed. As the Court explained in denying Ruzicka's original *Napue* motion, the false

testimony he takes issue with is only relevant to the outcome of the trial in that the jury being made aware of the false testimony might have affected Austin's credibility. But the jury was given an instruction about Austin's credibility, or lack thereof.

The Court again finds that the in-trial corrections and the jury instruction adequately remedied any potential *Napue* violations, such that Ruzicka was not prejudiced. Because Ruzicka makes no clear arguments about why the Eighth Circuit might disagree, the Court does not find that he has presented a substantial question, and will deny his motion in relation to this argument.

### E. Hearing Fusion/SoundPoint Prosecutorial Misconduct

Ruzicka reasserts arguments he's previously made in relation to testimony elicited from the United States regarding SoundPoint, and claims made by the United States regarding Hearing Fusion. The Court previously ruled that, even if there was misconduct on the part of the United States, that misconduct did not prejudice Ruzicka because the SoundPoint and Hearing Fusion evidence was relevant only to counts of which Ruzicka was acquitted. *Ruzicka*, 333 F. Supp. 3d at 880-83.

Ruzicka now argues that the Court should have granted him a new trial because the Court admitted the evidence as *res gestae* and the evidence was "tightly linked" to counts on which Ruzicka was convicted. However, Ruzicka does not present any arguments as to how relatively obscure and loosely linked evidence could have changed the outcome of the trial for the counts of conviction. Accordingly, the Court cannot find that Ruzicka presents a substantial question "so integral to the merits of the conviction that it is more probable

than not that reversal or a new trial will occur if the question is decided in the defendant's favor." *Powell*, 761 F.2d at 1234.

### F. General Arguments

Ruzicka next asserts a litany of arguments he has previously made and asks the Court to "reincorporate his previous arguments" without providing any discussion in his present motion. He cites generally to his motions for a new trial based on prosecutorial misconduct, constructive amendment of the indictment, and a miscarriage of justice. The Court addressed and denied each of these arguments in its post-trial order. *See generally Ruzicka*, 333 F. Supp. 3d 853. Ruzicka provides no additional arguments, nor does he explain why the question he presents on appeal is a substantial one that might result in a new trial. After reviewing the arguments and the Court's order, the Court finds that none of these issues present a substantial question, and will deny Ruzicka's motion for release as it pertains to these issues.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Ruzicka's Motion for Release from Custody Pending Appeal [Docket No. 693] is **DENIED**.

DATED: June 28, 2019             _____s/John R. Tunheim_____
at Minneapolis, Minnesota.             JOHN R. TUNHEIM
                                                            Chief Judge
                                          United States District Court